## No. 10,230.

### UNION PACIFIC RAILROAD COMPANY *v.* DENNIS.

Decided March 5, 1923.

Action in damages for false imprisonment. Judgment for plaintiff.

#### *Affirmed.*

1. JUDGMENT—*Presumption on Review.* On review, all presumptions are in favor of the judgment.

2. FALSE IMPRISONMENT—*Corporate Agent—Evidence.* Evidence reviewed and held to establish that the arrest and detention of plaintiff was caused, aided or abetted by an agent of defendant within the scope of his authority.

3. *Evidence—Telegram.* In a false imprisonment case, a telegram from agent to principal to the effect that he had arrested plaintiff and caused him to be detained, held competent, relevant and material evidence.

4. APPEAL AND ERROR—*Mis-conduct of Counsel—Presumption.* Where an assignment of error is based on alleged mis-conduct of counsel in argument, and the matter is not incorporated in the bill

of exceptions, it is assumed on review that the trial court found
there was no mis-conduct, and the assignment overruled.

5.  VERDICT—*Excessive—Damages for Pain and Suffering.*  Damages
    for pain and suffering, humiliation and injured reputation, can-
    not be accurately measured, and their monetary compensation
    is impossible.  Their ascertainment must be committed to the
    sound judgment of the jury under proper instructions.
        The contention in this case that the verdict was for an ex-
    cessive amount, overruled.

*Error to the District Court of Adams County, Hon. Samuel
W. Johnson, Judge.*

Mr. C. C. DORSEY, Mr. E. G. KNOWLES, for plaintiff in
error.

Mr. G. K. ANDRUS, for defendant in error.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

DEFENDANT in error, hereinafter referred to as plain-
tiff, brought this action against plaintiff in error, herein-
after referred to as defendant, for damages in the sum of
$2950.00 for false arrest and imprisonment.  Verdict was
for plaintiff for the full amount, and to review a judgment
thereupon entered defendant prosecutes this writ.

It is contended by plaintiff and denied by defendant
that the latter, through its agent John C. Gale, caused or
aided and abetted said arrest.  Defendant's motions for
nonsuit, directed verdict and new trial were each over-
ruled.  If its contention is correct each of these rulings
constitutes reversible error.

Upon many material facts the evidence was conflicting,
but all presumptions are in favor of the judgment, and
there was evidence which justifies the following con-
clusions:

On November 16, 1920, a Union Pacific train was held
up at Sandown in the City and County of Denver.  At that
time plaintiff lived at Brighton with his wife and two
children, and was employed as a chauffeur by one Fuller

running a truck daily from Brighton to the Windsor Creamery in Denver. November 22, 1920, defendant made the usual trip. Near midnight that night he was called from his bed by deputy sheriff McKinney of Adams County, and taken to the sheriff's office where he found McCabe and Eads (Denver detectives), Gormley (sheriff of Adams County), Gale, and others. He was there introduced to Gale as "a Union Pacific man" and examined by these parties for more than two hours concerning his whereabouts on November 16, and his knowledge of the circumstances of the robbery and persons accused thereof. The examination was begun and largely participated in by Gale. Defendant was then taken by automobile to the city of Denver. Gale helped put him in the car, sat beside him during the ride, and turned him over to the desk sergeant at the city jail upon their arrival. He was taken by Gale before the chief of police next morning, and in answer to his inquiry if he could give bail Gale answered, "We will hold you as long as we please." Gale took him to the "mug room" for photograph and finger prints and participated in having his picture taken by certain newspaper men. That picture was thereafter published in Denver papers with an account of his arrest in connection with the holdup. He was held in the Denver jail six days, deprived of necessary bedding, kept in a damp and unsanitary place, in the company of depraved characters, without sufficient food, and not permitted to communicate with family or counsel. As a result of his arrest and imprisonment, in addition to mental suffering, humiliation and damage to reputation he contracted a cold and rheumatism, was obliged to employ medical aid and incur other expenses, and suffered considerable loss of time in his employment. Neither Gale, McCabe nor Eads held any official position in Adams County, and Gale held none in the City and County of Denver. No warrant was ever obtained for defendant's arrest, no facts appear connecting him with the holdup, and no complaint was ever filed against him. Gale was chief special agent for the Union

Pacific Railroad Company. His duties were to investigate crimes against the company, its patrons and employees, protect their property and apprehend criminals. He was directed by the company to investigate this holdup and reported by wire to the general manager that he had arrived in Denver at four o'clock with defendant, who he thought knew something about it. He made no effort to have defendant released after his incarceration.

Under the court's instructions plaintiff could recover only upon proof by a preponderance of evidence of his arrest and detention, his damages and the amount thereof, that there was no legal justification for the arrest, and that the arrest was caused, aided or abetted by John C. Gale, then agent of defendant and acting within the scope of his authority. The jury was further instructed that plaintiff could not recover if, notwithstanding such findings, the actions of Gale were pursuant to orders and instructions of the chief of police of the City and County of Denver, or if the officers of said City and County of Denver knew that a felony had been committed and had reason to believe that plaintiff was guilty of aiding therein.

It thus appears that the material issues herein were fully submitted to this jury under proper instructions, and assuming as we must that it found the facts substantially as hereinbefore detailed, it seems to us too clearly established to admit of discussion that defendant, through its agent Gale, did cause, or aid, or abet, the arrest and detention of plaintiff.

Plaintiff applied for a commission to take the deposition of William Jeffers, general manager of the Union Pacific Railroad Company. Defendant moved to strike certain of the direct interrogatories. The commission was issued prior to the hearing of this motion and the deposition taken and returned with certain exhibits attached. The motion was later overruled. During the trial defendant moved to suppress certain portions of the deposition and the exhibits thereto attached. This motion was sustained as to all of said exhibits except "J" and otherwise over-

ruled. These adverse rulings are assigned as error. The deposition is not completely abstracted. There is nothing in the portion before us justifying the assignment. Exhibit "J" is a telegram from Gale to Jeffers reporting the former's arrival at Denver with the defendant. This telegram does not mention the Denver detectives or the Adams County officers. A fair construction of it is that Gale has arrested defendant on suspicion, taken him to Denver and caused his detention. Jeffers admits in his deposition the authority of Gale to make arrests "if such action is necessary to protect said company, its property, patrons or employees, where the person has committed or is about to commit a crime involving the Union Pacific Railroad Company's property, patrons or employees." In view of the fact that Gale did not ordinarily receive special instructions regarding arrests it is fair from the evidence to conclude that under the terms of his employment he was, in the absence of such special instructions, to use his own discretion as to the necessity for arrests where such crimes had been committed. For the exercise of that discretion his employer was responsible. Exhibit "J" therefore becomes clearly competent, relevant and material and there is no question of hearsay connected with it.

Counsel for defendant devotes considerable space to alleged misconduct of counsel for plaintiff in argument. Such misconduct is disputed. The argument was not reported. No attempt was made to incorporate it in the bill of exceptions, and it is only mentioned in the record in the unverified motion for a new trial. We must assume that the trial court found that it never occurred. That finding is binding upon us.

It is strenuously contended that this verdict "was enormously in excess of any possible damage shown." In addition to those items of damage which could be specifically ascertained, i. e., expense, lost time and medical bills, there is ample evidence to show pain and suffering, humiliation and injured reputation. Such damages can never be accurately measured and their monetary compen-

sation is impossible. Their ascertainment must be committed to the sound judgment of the jury under proper instructions. In determining whether such damages are excessive all the facts and circumstances of the arrest and detention must be considered. This defendant had previously borne a good reputation. He was living peacefully at home with his wife and family and regularly employed. He was taken from his home in the night-time, subjected for hours to a rigid examination, transported to the city of Denver, confined in the city jail for six days, refused bail, photographed for the newspapers, denied communication with friends, family or counsel, detained in unsanitary quarters, in degrading company, and given insufficient sustenance. If any shadow of an excuse can be found in this record for his arrest none appears for his detention. Further comment is superfluous. The only apparent explanation for the amount of the verdict is that no greater demand was made in the complaint.

Other errors assigned are wholly without merit and require no examination. The judgment is affirmed.

MR. JUSTICE DENISON not participating.