# MICHAEL E. RING v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

February 8, 1929.

No. 27,006.

See note in 18 A. L. R. 678; 22 A. L. R. 1558; 8 R. C. L. 554; 1 R. C. L. Supp. 627; 4 R. C. L. Supp. 561; 5 R. C. L. Supp. 476.
See note in 46 A. L. R. 1341.

[1]Reported in 223 N. W. 619.

Ralph T. Boardman and John F. Dulebohn, for appellant.

Roberts, Strong, Myers & Covell and Olof L. Bruce, for respondent.

HILTON, J.

Defendant appeals from an order denying its alternative motion for judgment non obstante or for a new trial.

Plaintiff, a member (engineer) of the Minneapolis fire department, brought this action to recover damages for personal injuries sustained in a collision on December 26, 1925, between a fire truck of the city upon which he was riding and a street car of defendant. The case was before this court on a previous occasion and is found reported in 173 Minn. 265, 217 N. W. 130. It was then sent back for a new trial because of an error in the charge of the court. On the former trial plaintiff had a verdict for $4,000. Plaintiff's motion for a new trial was granted on the issue of damages alone unless defendant should consent to an increase thereof to $6,000. Defendant appealed with the result above stated. In the second trial, before a different judge and jury, plaintiff's verdict was for $15,000. There are 21 assignments of error.

Two of defendant's assignments call in question the sufficiency of the evidence to sustain the verdict. It is claimed that the evidence conclusively shows that there was no negligence on the part of defendant's motorman and that the sole cause of the accident was the negligence of the driver of the fire truck. A careful examination of the evidence convinces us that it amply sustains the verdict. In the former opinion, the court stated [173 Minn. 265, 266]:

"The question of the sufficiency of the evidence to sustain a finding of negligence on the part of the defendant has been considered and the conclusion reached that there was evidence to go to the jury on that question and that it was sufficient to sustain such finding."

There is no material difference in the evidence given in that regard at the two trials; if any there be, that in the second trial was

more favorable to plaintiff's position. We therefore make no attempt to detail the evidence.

■ During the last trial one of the attorneys for plaintiff was interviewed by a newspaper reporter without at first knowing he was such. As a result an article appeared in a leading daily paper of Minneapolis relative to the case and the result of the former trial, the granting of a new trial by the supreme court, and certain statements as to the nature of the accident and the injuries received by plaintiff.

On the second day of the second trial, after one witness had testified, attorneys for defendant called the court's attention to the newspaper article and asked that the jury be discharged and the case continued until a new panel could be called. Several conferences were held with attorneys on both sides. The court declined to grant defendant's request, and his refusal is assigned as error. There was no objection offered by plaintiff to the granting thereof. Immediately upon the opening of court, after his attention had been called to the article, the trial judge asked the jury whether any of them had seen an article in the paper (naming it) headed "Second Trial of Fireman's Claim Opens." The answers disclosed that none of them had seen it or heard anything in reference to it. The jurors were further asked to promise, and did so, that they would refrain from reading the article in question or any part of it and from undertaking in any way to ascertain its contents; further, whether, in case against their will and without their procurement any information should come to them during the trial about the contents of the article or about the facts to which the article related, they would be able to exclude the same from their minds and decide the case entirely on what occurred at the trial. A satisfactory response was made, and further admonitions and warnings were given. Considering this ample justification therefor, the court ordered the trial to proceed. The court again referred to the matter in its charge, calling attention to the promise that had been given as above recited. The jurors were then asked whether any of them had received from any source any information as to the article or its

contents. The answer was in the negative. The jury was further charged that if any of them had it should be wholly disregarded and that it should be borne in mind that the case should be determined absolutely on the evidence received in court without the slightest regard as to whatever may have happened in any other case.

It is to be noted that the jury did not at any time see or know of the article. It is more than likely that the article was more prejudicial to plaintiff than it was to defendant for it referred to the fact that the verdict of the former jury was for $4,000 and that the trial court had raised it only $2,000; further, that the supreme court had granted defendant a new trial.

Defendant cites a number of cases having to do with newspaper comments. A careful reading of them however shows that they are not controlling here for the reason that the situations were different. In some of them it appeared that one or more of the jurors had read the article. In others, the article was of an inflammatory nature and such as to prejudice the jury. There are authorities to the effect that even if a newspaper article was read by a juror and he stated that it did not influence him, the situation did not warrant the granting of a new trial even in a criminal case. U. S. v. Reid, 12 How. 361, 13 L. ed. 1023; see also Kerr v. Lunsford, 31 W. Va. 659, 8 S. E. 493, 2 L. R. A. 668. In the case of Sherwood v. C. & W. M. Ry. Co. 88 Mich. 108, 50 N. W. 101, a newspaper article was published giving the amount of a verdict on a former trial, and this article reached some of the jury. The application for an arrest of the progress of the trial and the granting of a new trial was denied, and defendant's counsel insisted that it was prejudicial, especially in view of the fact that the verdict returned was larger than in the former trial. This contention did not receive the approval of the court.

In the case of State v. Minneapolis Milk Co. 124 Minn. 34, 144 N. W. 417, 51 L.R.A.(N.S.) 244, a criminal action, the county attorney, at the close of the trial, gave out interviews of an inflammatory nature to the newspapers. Although the court states that the interviews were published and probably reached the jurors, it was

held that the question as to whether the county attorney was guilty of misconduct was peculiarly one for the trial court to determine as to the effect thereof upon the jurors and whether prejudice resulted therefrom. See also Ceylon Farmers Elev. Co. v. Fidelity & Deposit Co. 163 Minn. 280, 203 N. W. 985. The learned trial court handled the situation in an especially thorough, careful and proper manner, with which we are in accord. There was manifestly no error.

■ The refusal of the court to permit defendant to introduce evidence as to plaintiff's right shortly to receive a pension is assigned as error. Whether plaintiff would or would not, at some time in the future, receive a pension had no relation to his future earning capacity. It had nothing to do with the amount he could be awarded as damages. The proffered evidence was properly rejected.

We have examined other rulings of the court on the admission of evidence and find no error therein.

■ Another assignment of error had to do with a portion of the court's charge relative to speed and right of way. That portion of the charge should be read in connection with what follows it. So read, it is not subject to criticism. The charge of a court is to be considered in its entirety and not by selecting isolated portions thereof. A request for an instruction as to the motorman's right to choose as to his action in an emergency was properly refused. It did not contain the necessary premise as to lack of negligence on the part of the motorman. We have carefully examined the charge of the court in its entirety. It fully covered the situation and was fair and impartial.

■ It is urged that the verdict is excessive and that a new trial should be granted because thereof. Plaintiff at the time of his injury was earning $2,160 per year. We quote from the statement, as to injuries, contained in Ring v. Minneapolis St. Ry. Co. 173 Minn. 265, 266, 217 N. W. 130 (December 30, 1927):

"He sustained a multiple fracture of both bones of the left leg below the knee. The fracture was what is known as a compound fracture with a breaking through of the skin and much laceration

of the flesh. There were also lacerations and a flesh wound of the right leg. The recovery has resulted in the left leg's being about half an inch shorter than the right and slightly bowed or bent, causing a slip limp. The foot is somewhat flattened, with impaired movement of the ankle joint, and there is some numbness and impairment of the use of the leg and foot. There is otherwise a good recovery."

It appears from the evidence at the last trial that while plaintiff was in the hospital for nine weeks he never slept more than an hour at a time; his weight decreased 35 to 40 pounds; he had never been sick before; when he was taken home his leg was put in a cast; he was kept in a fracture bed until July; the skin over the wound did not begin to heal until six months after the injury; there is no adequate circulation in his foot and it is continually cold; his left leg is bowed backward and is smaller than his right leg; his knee is still swollen; when he moves about during the day the knee and ankle joints swell; the ankle is constantly sore; when he walks four or five blocks pain commences in his knee and ankle preventing him from moving any farther. Plaintiff's physical condition will prevent him from engaging in any useful occupation except something in a sedentary line. There is medical testimony that the leg will never get any better; that if there is any change it will be for the worse.

Although the verdict is large, we cannot say that it is so excessive as to require the granting of a new trial or a reduction. It has the approval of the trial court and should stand.

Affirmed.