No.  20381.

RANDALL A. MOYER, ET AL., *v.* MARVYON VICTOR MERRICK.
(392 P.2d 653)

Decided June 1, 1964.

Messrs. MYRICK, SMITH and CRISWELL, for plaintiffs in error.

Mr. DUANE O. LITTELL, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

PLAINTIFFS in error were plaintiffs in the trial court, and, although successful there insofar as the jury returned verdicts in their favor, are here by writ of error seeking to set aside the judgments and to have us order a new trial on the issue of damages alone. The liability of defendant is predicated upon his negligence as matter of law in a head-on collision in which he was on the wrong side of the road. We are of the opinion that under the evidence the court should have directed a verdict in favor of the plaintiffs on the question of liability. Submitting issues of unavoidable accident and contributory negligence to the jury under the facts of this case was error. *Bird v. Richardson,* 140 Colo. 310, 344 P.2d 957.

Plaintiffs here complain that the award of damages was insufficient and that the small verdicts were attributable to prejudicial error in the trial. Their motion for new trial on the same grounds was denied by

the court. Randall A. Moyer's damages were assessed at $4821.00 and Mrs. Anna M. Moyer's at $1162.00.

We state at the outset that there are no grounds upon which the verdict for Mrs. Moyer can be disturbed, and we affirm the judgment in her favor in the amount entered by the court.

There were two occurrences during the trial affecting the matter of damages sustained by Randall Moyer. One, although constituting error, would not be ground for reversal, but the other was so prejudicial that it warrants reversal of the judgment. We comment on both occurrences so that they will not be repeated in the course of the new trial, which we are disposed to grant. The line of questioning pursued in the cross examination of Randall Moyer and allowed by the court forms the basis of the error.

When Randall Moyer gave testimony on direct examination, he stated that he had become obligated for certain medical bills. The transcript reveals the following questions and answers:

"Q. Now, Mr. Moyer, after the accident, after you were treated by the Gates clinic by Dr. Bigelow and Dr. Guese, you became obligated for certain medical bills there, is that correct?

"A. That's right.

"Q. Do you know how much the amount was on that, how much you had to pay Dr. Bigelow and Dr. Guese at Gates Clinic?

"A. Let's see. I can't tell you right offhand, but I got it wrote down here.

"Q. All right.

"A. I paid Gates clinic $153.50.

"Q. This was $153.50. All right, you paid that. That's all you paid. That was for the doctor and the clinic?

"A. And my wife, $52.00."

On cross examination the following took place:

"Q. Now, is Dr. Guese your own family physician? I mean does he treat your family as a family physician?

"A. Not at home. We just go to the Gates clinic.

"Q. Did you have a family physician of your own?

"A. No.

"Q. This Gates clinic is something that is furnished to you as a result of working there? It is made available to you by virtue of the fact that you work there, is that right?

"A. Yes. We paid them for it.

"Q. I beg your pardon?

"A. We pay for it every month. We pay so much.

"Q. Then your testimony here today that you paid $153.50 is not correct, is it? You didn't actually pay it, did you?

"Mr. Myrick: If the Court please, I believe the testimony was that he became obligated for something of that sort. Now, it is quite clear in this matter that he is entitled — if he got the money through insurance, or anything else — to damages for the amount that he was obligated for, and there is a stipulation that it was reasonable.

"Mr. Littell: I have no objection. I agree with that, but I have a right to show how they incurred these things, and he did testify that he paid them, which he didn't do.

"The Court: Go ahead.

"Q. [By Mr. Littell] So when you go for therapy and those treatments there, you go in there, and you don't actually dig down in your pocket and pay out three or five dollars a treatment, do you?

"A. No.

"Q. It is paid for, but a certain amount a week is deducted for this Mutual Benefit?

"A. It is still paid for.

"Q. Yes, and you pay for it like accident and health insurance, don't you?

"A. Yes."

Counsel for defendant attempts to justify this series of questions on the basis that he was impeaching the

witness. In his brief he engages in semantics by contending that when the plaintiff said that he had to *pay* these bills he was lying and that he had the right to impeach him and to show he didn't *pay* the bills. The testimony clearly shows that Moyer did pay for the medical expenses in the sense that he had been assessed monthly by his employer for this company medical aid. This was just like paying premiums on insurance. We do not believe this line of questioning was calculated to impeach the plaintiff but was a deliberate attempt to show the jury that he had medical insurance of a kind that did not bring about any out-of-pocket expense as such. A person from whose paycheck deductions were made for a health and medical plan has paid the medical bill in any event. At the pretrial conference these medical bills were agreed upon as having been incurred and as being reasonable. Counsel knew they were part of the damages and were chargeable as such. Even if we could find this question as being an attempt to impeach, it was impeachment on a matter that was not an issue in the case and not material. The expense admittedly was recoverable.

Plaintiff asked that the jury be instructed that no deduction could be allowed the defendant for any amount that might be paid by the insurance or for medical care furnished by the employer. This instruction was refused by the court.

The amount involved is small, and if added or subtracted from the jury verdict would not amount to much, but we comment on the occurrence so that our disapproval of the line of questioning indulged in may be expressed and also because it is similar to a second and more serious occurrence in the trial.

Mr. Moyer on direct examination very candidly admitted that he had left his employment at the Gates Rubber Company sometime after the accident because of a company rule making it obligatory for one upon attaining the age of 65 to accept retirement. He testi-

fied that he had planned to use his skill as a pipe-fitter to engage in the plumbing business after his retirement; that he had done such work in the past, and that as a plumber he would be capable of earning $2.50 an hour for such work. He testified, with some medical support in the evidence, that he was not able to perform such work after the accident and that he was "presently doing light maintenance work for The American Legion" twelve days a month, for which he was paid $90.00 a month. He testified that he tried other work but could not perform it.

On cross examination, over objection, which the court overruled, the following occurred.

"Q. You are retired from Gates and have a pension from Gates, is that right?

"A. Yes.

"Q. You have social security?

"A. Yes.

"Q. Then you have this work that you do?

"A. Yes.

"Mr. Myrick: If the Court please, the questions are improper, but they are before the jury. I would just like an instruction on the collateral source doctrine at the end. The fact that at this time he draws social security, has a pension, or anything else, has nothing to do with the amount of damages he has suffered.

"Mr. Littrell: If your Honor please, I want to show that you can only make so much money under social security.

"Mr. Myrick: If the Court please, the question is completely irrelevant and immaterial, and he has already brought it before the jury, and I think the instruction would be necessary to correct the error.

"The Court: You have pleaded loss of earnings.

"Mr. Myrick: I have pleaded loss of earnings, but it is the collateral source doctrine that I am talking about. The social security — the amount that you can earn under social security and not get it has nothing to do

with the capacity of the person to earn wages, and it is the earning capacity that determines the amount of damages, not what he may have provided for himself through social security or through retirement programs.

"Mr. Littrell: The point, if your Honor please, is that it is a matter of what a person intends to do or wants to do, and when you retire and you make money in excess of a certain amount, then you don't get both, and that is the point of what these people do.

"The Court: Can you give up social security, though, and take a job if you make more money?

"Mr. Littrell: Yes. Yes, that is it, but if you want to be retired, and you only want to make so much money, then you have to do it the way he is doing it. I think that is very proper to have before the jury, because it is a well-known fact under our social set-up.

"Mr. Myrick: I wish to state my objection for the record. I think it is completely improper before the jury.

"The Court: Overruled."

This entire line of questioning was incompetent and irrelevant. It had no bearing on the issues of the case, and tended to destroy plaintiff Moyer's rights to be compensated for impairment of his physical capacity and impairment of his ability to earn, regardless of whether he intended to work or not. What one's earning capacity would be if not interfered with because of the injury caused by defendant is the true test. The fact that the injured party was in a family business and received no compensation was held to be immaterial on the question of loss of earning capacity in *Nemer v. Anderson,* 151 Colo. 411, 378 P.2d 841. In *Pawnee v. Powell,* 76 Colo. 1, 227 Pac. 836, the one whose earning capacity was impaired was a school boy. In *Gray v. Dieckmann,* 109 F. (2d) 382 (1st Cir.) the person injured was permanently retired. It was held in these cases that these facts do not prevent an award for impairment of the ability to earn although the ability is unexercised.

Mr. Moyer had a life expectancy of thirteen years. If the jury was to give any consideration to his contention that he could have earned $100.00 a week as a plumber had it not been for his injuries, his earning capacity in one year was $5200.00. Yet the verdict was for only $4821.00. The evidence of the receipt of the pension and social security and the statement by counsel that this was "to show that you can only make so much money under Social Security" may have led the jury to conclude that the government under the Social Security rules would not allow him to earn $100.00 a week and that therefore it didn't make any difference whether he was prevented by injuries from earning such amount. Such conclusions should have no part in the jury's considerations. Save for his injuries Mr. Moyer was at liberty freely to choose to continue working at a stated wage of $2.50 per hour or to accept Social Security payments and limit his earnings. As a result of the impairment to his earning capacity, he was deprived of this freedom to choose to earn a full wage and was forced to accept his pension. This did not deprive him of the right to compensation for whatever impairment he suffered by reason of the accident.

It is because of this fact that courts have almost uniformly held that evidence of receipt by plaintiff of a public or private pension cannot be admitted into evidence. It is not in mitigation of damage so has no place in the trial of a case. See annotations in 75 A.L.R. (2d) 885.

In *Ring v. Minneapolis St. Ry. Co.*, 176 Minn. 377, 223 N.W. 619, there was an attempt in the trial to introduce evidence as to the fact that plaintiff would shortly be entitled to a pension. In that case the trial court refused the introduction of such evidence, and this was assigned as error. The Supreme Court said:

" * * * Whether plaintiff would or would not, at some time in the future, receive a pension, had no relation to his future earning capacity. It had nothing to do with

the amount he could be awarded as damages. The proffered evidence was properly rejected."

In *McMinn v. Thompson,* 61 N.M. 387, 301 P.2d 326, it was the contention of a defendant that the court erred in refusing tendered proof that plaintiff was drawing *more* from Social Security benefits than she would have earned in her business, and that she could not have drawn Social Security payments if she had remained in the business and assisted in the conduct of the business in which she was a partner. The New Mexico Court commented on this argument, thusly: "No authorities in point are cited in support of the claim [to be allowed to show plaintiff's Social Security] and we are satisfied it is without merit." (Bracketed material supplied by us for clarity.)

■ One other point must be commented upon for guidance of the court during the new trial. The trial court refused to instruct the jury concerning the effect of a pre-existing arthritic condition when such a condition is aggravated or made active by trauma, and when it is impossible to apportion between the two with any degree of medical certainty. Since this case was tried we have enunciated the rule of law to guide the court in cases presenting this problem. See *Newbury v. Vogel,* 151 Colo. 520, 379 P.2d 811; *Intermill v. Heumesser,* 154 Colo. 496, 391 P.2d 684. The principles stated in those cases control the problem presented, and a proper instruction on this rule should be given the jury in this case.

The judgment as to Randall Moyer is reversed and the cause remanded for new trial on the issue of damages only. The judgment as to Anna Moyer is affirmed.

MR. CHIEF JUSTICE McWILLIAMS and MR. JUSTICE MOORE concur.