**Jerome Francis GOODBOE, Plaintiff-Appellant,**

v.

**Police Officer Victor D. GABRIELLA of the Westminster, Colorado Police Department; Bethesda Hospital Association, a Colorado non-profit corporation; Dr. Keith Davis, Ph.D.; and Dr. Charles Titus, M.D., Defendants-Appellees.**

No. 80CA0211.

Colorado Court of Appeals,
Div. I.

Jan. 20, 1983.

Rehearing Denied Feb. 17, 1983.

Certiorari Denied April 25, 1983.

William J. Fritsche, Aurora, for plaintiff-appellant.

Wood, Ris & Hames, Eugene S. Hames, Mark R. Davis, Denver, for defendant-appellee Victor D. Gabriella.

Paul D. Renner, P.C., John R. Rodman, Denver, for defendant-appellee Bethesda Hosp. Ass'n.

Glasman, Jaynes & Carpenter, Richard H. Glasman, Denver, for defendant-appellee Dr. Keith Davis, Ph.D.

Hall & Evans, Richard D. Hall, Denver, for defendant-appellee Dr. Charles Titus.

ENOCH, Chief Judge.

Plaintiff, Jerome Goodboe, appeals from an adverse judgment entered on a jury verdict in his suit for damages allegedly resulting from his confinement to and treatment at a mental hospital. We affirm in part, reverse in part, and remand.

On February 24, 1975, plaintiff's wife contacted defendant Davis, a psychologist who had previously treated plaintiff, and had counseled plaintiff and his wife regarding certain marital problems, concerning the possible hospitalization of plaintiff. Dr. Davis and plaintiff's wife agreed that plaintiff should be hospitalized. Subsequently, Dr. Davis contacted the defendant Bethesda Hospital to ascertain if a bed was available, and plaintiff's wife called for an ambulance to pick up plaintiff and transport him to Bethesda.

Shortly thereafter, an ambulance, and two Westminster policemen, defendant Gabriella, and another officer not a party to this action, responded to the call for assistance from plaintiff's wife. There was evidence that plaintiff was intoxicated when ambulance attendants arrived. His hospital admission forms were signed by Dr. Davis, and by a medical doctor connected with the hospital. The diagnosis of plaintiff on admission was "intoxication, paranoid ideation, suspiciousness and grandiosity," with a notation of "acute alcohol and librium intoxication." The consent to treatment form was signed for plaintiff that evening by his wife, who had followed the ambulance to the hospital. The next day plaintiff voluntarily executed a consent to treatment form as well. On February 27, 1975, Dr. Titus, also a medical doctor, replaced the first physician and thereafter worked with Dr. Davis in the treatment of plaintiff.

On March 3, 1975, Dr. Titus recorded in his progress notes for plaintiff that he "impresses as schizophrenic with delusional

thought processes around soma and wife," and that a court order "might be considered if he becomes involuntary."

On March 7, 1975, plaintiff made a written demand to be released from the hospital. Dr. Titus, in a letter in which he diagnosed plaintiff as a "schizophrenic, psychotic paranoid, acute," a more serious condition than the original diagnosis of "paranoid ideation," petitioned the Adams County District Court for an order of involuntary hospitalization pursuant to § 27–9–103(3)(c), C.R.S.1973. (Sections 27–9–101, et seq., C.R.S.1973, were repealed and a new mental health code was enacted, § 27–10–101, et seq., C.R.S.1973, effective July 1, 1975.) The court issued the order on March 10, 1975, and a guardian ad litem was later appointed for plaintiff. The guardian ad litem requested termination of the order, and on April 14, 1975, the Adams County District Court terminated the order.

Plaintiff's complaint alleged that officer Gabriella falsely imprisoned plaintiff, and that the hospital, the psychologist, and the attending medical doctor committed the torts of false imprisonment, assault, and battery. The major defense for all the parties was that until March 7, 1975, plaintiff consented to treatment in that he was a voluntary patient, and that the defendants were immunized from liability for any damages arising after that date by virtue of the provisions of § 27–9–122, C.R.S.1973, and by the March 10 court order.

The trial court granted a directed verdict in favor of the police officer, instructed the jury that it could not find "any of the defendants liable because of their actions after entry of the court order of March 10," and refused to instruct the jury regarding the elements of assault and battery. The jury returned a verdict in favor of the doctors and the hospital regarding liability prior to March 10 on the remaining claim of false imprisonment. Plaintiff alleges as error the entry of these three orders and challenges various evidentiary rulings as well.

I.

The trial court found that the doctors and the hospital could not be liable for any actions occurring after March 10, 1975, because after that date they were acting pursuant to a valid court order for involuntary hospitalization which immunized them from liability. Plaintiff argues that the court order for involuntary hospitalization did not bar his action for false imprisonment because the order was not obtained in good faith. The trial court, however, refused to submit to the jury the issue of good faith and refused to make any findings regarding the sufficiency of the evidence on the issue of good faith. That refusal was premised on the court's finding that the judge who first issued the order had implicitly found the application to be in good faith, and on its further finding that it would be improper to allow plaintiff to attack collaterally the court order in this tort action inasmuch as the original order had not been appealed. We agree with plaintiff's position and conclude that it was error not to allow the jury to decide whether the court order was obtained in good faith.

Section 27–9–122, C.R.S.1973, in effect at the time of plaintiff's hospitalization, provided that:

"No person, acting in good faith under any order of court directing that a respondent be held in custody or be held for confinement, examination, diagnosis, observation, or treatment, and not acting in violation or abuse thereof, shall be liable for such action. No action for false arrest or false imprisonment shall be brought against any peace officer or sheriff who, in good faith, takes a person into protective custody under § 27–9–104. No action based on the act or fact of filing a petition shall be brought against any person who, in good faith, files a petition or otherwise acts under § 27–9–105, or § 27–9–106; but any person who wilfully causes, or conspires with or assists another to cause, unwarranted hospitalization or confinement under the provisions of this article shall be liable in damages to the person so hospitalized or confined."

■ In *Province v. Brown,* 188 Colo. 83, 532 P.2d 948 (1975), this statute was interpreted by our Supreme Court to set out an affirmative defense of immunity which would bar liability against those persons acting pursuant to the court order if they "acted in good faith and without violation or abuse of the court order." However, the statute does not require the alleged victim of an unwarranted hospitalization, such as the plaintiff here, to appeal the original commitment order, and it was error for the trial court to hold that the March 10 court order barred plaintiff's cause of action for any acts of these defendants after its entry.

As mentioned, the trial court made no findings regarding the sufficiency of the evidence on the issue of good faith and gave an instruction removing that issue from the consideration of the jury. The effect of such an action was to grant a partial directed verdict in favor of these defendants. The doctors and the hospital, however, urge us to rule that, as a matter of law, there was no evidence of bad faith, and on that basis to affirm the action of the trial court. This we decline to do.

■ Whether the doctors acted in good faith when they filed the petition for an involuntary hospitalization order and whether the hospital acted in good faith pursuant to that order are questions of fact. *See Brown v. Rosenbloom,* 34 Colo.App. 109, 524 P.2d 626 (1974), *aff'd sub nom., Province v. Brown, supra; see also Gonzales v. Harris,* 34 Colo.App. 282, 528 P.2d 259, *rev'd on other grounds,* 189 Colo. 518, 542 P.2d 842 (1975) (interpreting the good faith provisions in the "shopkeeper's privilege" statute, § 18–4–407, C.R.S.1973). Therefore, it was for the jury to decide whether these defendants acted in good faith. A directed verdict on this issue should be granted only if, assuming the truth of the plaintiff's evidence, and drawing every favorable inference of fact therefrom, reasonable persons could reach only one conclusion, that being that these defendants acted in good faith. *Metropolitan Gas Repair Service Inc. v. Kulik,* 621 P.2d 313 (Colo.1981); *Comtrol, Inc. v. Mountain States Telephone & Telegraph Co.,* 32 Colo.App. 384, 513 P.2d 1082 (1973).

Here, plaintiff testified that Dr. Davis, in response to plaintiff's threat to sue if not released, said that he would have to "cover" himself. Furthermore, evidence was presented that Drs. Davis and Titus changed plaintiff's diagnosis from paranoid personality to "schizophrenic psychotic paranoid acute" on the day the order for involuntary hospitalization was requested.

Moreover, plaintiff's theory was that his hospitalization resulted from a conspiracy between his wife, the doctors, the hospital, and the police, to obtain control of his monetary assets and custody of his child. This theory was consistent with evidence in the record that plaintiff's wife sought a conservatorship for plaintiff, that she was planning to seek custody of his child, that she had been in contact with Dr. Davis prior to calling for the ambulance for plaintiff, and that she went to the hospital on the evening of February 24th to sign plaintiff's consent to treatment form when plaintiff was, in the opinion of the hospital staff, physically unable to sign such a consent.

Viewing this evidence in light of the standard noted above, we conclude that the trial court should not have taken the question of whether these defendants acted in good faith from the consideration of the jury by issuing the limiting instruction. *See Province v. Brown, supra.* Therefore, the limiting instruction given by the court was improper, and the judgment as to these defendants must be reversed.

II.

The police officer's defense to plaintiff's allegation of false imprisonment was that plaintiff was never taken into custody by the police. After hearing all of the evidence, the trial court granted a directed verdict in the police officer's favor. We affirm.

■ Absent any legal justification for restricting another's freedom of movement, each of the three following elements must be proven to sustain a claim for false imprisonment: (1) The defendant intended to

restrict plaintiff's freedom of movement; (2) plaintiff's freedom of movement was restricted for a period of time, however short, either directly or indirectly by an act of defendant; and (3) plaintiff was aware that his freedom of movement was restricted. *Colo.J.I.* 21:1 (2d ed. 1980); *see Restatement (Second) of Torts* § 35 (1965).

■ Again applying here the standard for a directed verdict noted above, we conclude that the facts, when viewed in a light most favorable to plaintiff, do not establish a claim for false imprisonment. The only evidence of any kind to support plaintiff's claim for false imprisonment against defendant Gabriella was plaintiff's statement that defendant touched his elbow in a nonforceful manner, and plaintiff's testimony that the mere presence of uniformed police officers intimidated him into submission. There were no words spoken by defendant Gabriella to plaintiff, and the two officers had no further contact or involvement with plaintiff after the ambulance attendants placed plaintiff in the ambulance. We agree with the trial court ruling that such evidence was insufficient to withstand defendant Gabriella's motion for a directed verdict on plaintiff's claim for false imprisonment, and we hold that reasonable minds could not reach the conclusion that defendant Gabriella intentionally sought to restrict plaintiff's freedom of movement. *Comtrol, Inc., supra;* see *Colo.J.I.* 21:2 and 21:3 (2d ed. 1980); *Restatement (Second) of Torts* §§ 36–38, 43, 44 (1965). We therefore affirm the granting of a directed verdict in favor of defendant Gabriella.

### III.

■ Plaintiff next contends that the trial court erred in refusing to instruct the jury on the torts of assault and battery. We disagree.

Plaintiff alleged that, while he was confined in the hospital, the psychologist, the physician, and the hospital staff committed various batteries against plaintiff, including the drawing of plaintiff's blood and the involuntary sedation of plaintiff. In conjunction with this claim of battery, plaintiff also alleges that these defendants caused him to fear that his resistance to treatment would have resulted in punitive measures. Allegedly as a result of this fear, plaintiff consented to treatment and now contends that under such conditions of duress, defendants' treatment of plaintiff constitutes an assault. The evidence does not support these allegations.

The uncontroverted testimony of the defense witnesses was that all medications were simply offered to plaintiff, and that no medication was given intravenously. Moreover, the testimony indicates that when plaintiff refused offered medication, no efforts were made to force him to take the medication. There is no evidence that any threats were made, nor that plaintiff was restrained and forcefully administered treatment at any time during his hospitalization. Thus we find no evidence to support plaintiff's claim for battery.

■ On his claim of assault, plaintiff testified that he was afraid both to resist when medication was offered, and to withhold his consent when blood tests were requested. However, there is no evidence that this apprehension was caused by the *intentional* acts of any of these defendants. *See Mooney v. Carter,* 114 Colo. 267, 160 P.2d 390 (1945). We therefore agree with the trial court's action in refusing to instruct the jury on the elements of assault and battery.

### IV.

■ Plaintiff further contends that the trial court erred in instructing the jury concerning the elements of false imprisonment by stating that the defendants must have "unlawfully" intended to restrict the plaintiff's freedom of movement. We agree, and because of this erroneous instruction, the verdict of the jury and the judgment entered on the claim of false imprisonment must be set aside.

■ Early case law approved the use of the word "unlawful" in instructions on false imprisonment in order to show that the imprisonment was without legal justification. *Baker v. Barton,* 1 Colo.App. 183, 28

P. 88 (1891); *see Union Pacific R.R. v. Dennis,* 73 Colo. 66, 213 P. 332 (1923). However, with the decision in *Crews-Beggs Dry Goods Co. v. Bayle,* 97 Colo. 568, 51 P.2d 1026 (1935), legal justification was treated as an affirmative defense. *See Restatement (Second) of Torts* § 118 (1965); *W. Prosser, Torts* § 12 (4th ed. 1971). Thus, the instruction on false imprisonment found in *Colo.J.I.* 21:1 (2d ed. 1980) does not use the term "unlawfully" in its explanation of the elements of the tort, but does provide in the last paragraph of the recommended instruction a place for the listing of any affirmative defenses to false imprisonment, such as legal justification. Following the form suggested in that instruction would have been the most appropriate way in which to instruct the jury on the issue of legal justification. Accordingly, at the new trial, we recommend that the above procedure be followed by the trial court.

## V.

■ Since a new trial will be required we will address certain other issues asserted by plaintiff.

Plaintiff first contends that the trial court erred in admitting evidence of plaintiff's receipt of a government psychiatric disability pension. We disagree.

Plaintiff may be correct in arguing that, under the collateral source rule, his receipt of the government pension did not constitute a set-off against damages for which the defendants were liable. *See Moyer v. Merrick,* 155 Colo. 73, 392 P.2d 653 (1964). However, the evidence that plaintiff was receiving a psychiatric disability pension was not introduced to establish a set-off, but rather to prove plaintiff's psychiatric condition immediately prior to hospitalization in order to show that the hospitalization was warranted. Therefore, it was not error for the trial court to allow defendants to show that plaintiff was receiving a government psychiatric disability pension, especially where, as here, the trial court did not allow the defendants to present evidence concerning the amount of the pension.

## VI.

■ We find no merit in plaintiff's contention that it was error for the trial court to prohibit testimony concerning a statement allegedly made by the judge who terminated the order of involuntary hospitalization. Plaintiff alleged that the judge apologized to plaintiff at the time he terminated the hospitalization order, making a statement to the effect that the order never should have been entered in the first place. This statement was hearsay and does not fall within any of the hearsay exceptions. Therefore, we agree with the trial court ruling that the statement should not have been admitted. Colorado Rules of Evidence 802.

## VII.

■ Plaintiff also contends that the trial court erred in permitting cross-examination of one of plaintiff's witnesses concerning the fact that plaintiff had been arrested for driving under the influence subsequent to his release from hospitalization. We agree.

Plaintiff called the attorney who served as his guardian ad litem after entry of the order for involuntary hospitalization as a witness to testify concerning plaintiff's mental condition near the time of hospitalization. Defendants sought to impeach this witness' testimony by showing that this witness represented plaintiff in other unrelated legal matters. It was established during cross-examination that the witness represented plaintiff in the early stages of this lawsuit, but withdrew when it became apparent that he would be called as a witness on plaintiff's behalf. It was also established that the witness represented plaintiff on charges of driving under the influence which arose subsequent to plaintiff's release from the hospital. The fact that plaintiff was arrested for driving under the influence after his release from the hospital was irrelevant to his complaint for false imprisonment and assault and battery, and, under the circumstances, was prejudicial.

The references made to driving under the influence charges were unnecessary for the

impeachment of the witness. It had already been established that the witness represented plaintiff in this lawsuit, and the questioning should have been limited to whether the witness also represented plaintiff in other matters. Therefore, there should be no reference to driving under the influence charges during any cross-examination at a new trial.

We have reviewed the other alleged errors and find them to be without merit.

The judgment is affirmed as to the directed verdict in favor of defendant Gabriella, and as to the judgment in favor of the remaining defendants on the claims of assault and battery. The judgment is reversed, however, as to the complaint for false imprisonment against defendants Bethesda Hospital and Drs. Titus and Davis, and the cause is remanded for a new trial in accordance with the views expressed herein.

COYTE and TURSI, JJ., concur.