Larry CROSSGROVE, Plaintiff–Appellant,

v.

WAL–MART STORES, INC., Defendant–Appellee.

No. 09CA0689.

Colorado Court of Appeals, Div. III.

June 24, 2010.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2009.

Franklin D. Azar & Associates, P.C., Robert O. Fischel, Aurora, Colorado, for Plaintiff–Appellant.

Harris, Karstaedt, Jamison & Powers, P.C., A. Peter Gregory, Steven R. Helling, Englewood, Colorado, for Defendant–Appellee.

Opinion by Judge ROMÁN.

In this personal injury case, plaintiff, Larry Crossgrove, appeals the judgment for damages entered on a jury verdict against defendant, Wal–Mart Stores, Inc. We conclude the trial court erroneously admitted collateral source evidence; therefore, we vacate the judgment as to damages and remand for a new trial on damages.

## I.  Background

Crossgrove was struck on the head by a manually operated overhead garage door while delivering cookies to a Wal–Mart store. Based on a negligence theory, he sued Wal–Mart for injuries, claiming in pertinent part over $240,000 in billed medical expenses.

Crossgrove filed a motion in limine seeking to prevent Wal–Mart from introducing evidence of payments to his medical providers by third parties.  Wal–Mart sought to introduce evidence that the providers accepted $40,000 in full satisfaction of the bills.

The trial court denied Crossgrove's motion, concluding that the amount paid was admissible as evidence of the reasonable value of the services.  In light of this ruling, the parties stipulated as follows: "The parties have stipulated that $40,000 was accepted by the health care providers in full payment of all of the medical bills by the plaintiff in this action."

Nevertheless, Crossgrove also testified to the full amount ($242,293.86) billed by his providers and asked the jury to award him economic damages amounting to over $340,000, including the fully billed amount of medical expenses as well as lost income of $101,520.[1]

The jury was charged with determining whether Wal–Mart had been negligent and, if so, whether that negligence caused any injuries to Crossgrove. In that regard, the jury was instructed to determine the extent, if any, of Crossgrove's fault for the claimed injuries, and to determine the amount of damages suffered by Crossgrove in three separate categories: economic, noneconomic, and physical impairment or disfigurement.

In assessing the amount of economic losses, the jury was instructed it could consider past and future losses, including loss of earnings and "reasonable and necessary medical, hospital, and other expenses."

The jury returned a verdict for Crossgrove, awarding him a total of $50,000 for economic losses and an additional $27,375 in noneconomic damages. The jury also determined Crossgrove was 20% at fault.

In post-trial motions, Wal–Mart moved the trial court to reduce the amount of the award, under section 13–21–111.6, C.R.S. 2009, by $40,000 for payments it asserted had been made by third parties to the medical providers. Crossgrove moved for a new trial, citing the court's admission into evidence of the amount paid in satisfaction of the medical bills.

The trial court denied Crossgrove's motion for a new trial and granted Wal–Mart's motion to reduce the amount of the award. After reducing the jury's total award of $77,375 by 20% for Crossgrove's attributed fault and $40,000 for payments made by third parties, the trial court entered judgment for Crossgrove in the amount of $21,900, plus interest. This appeal followed.

## II. Standard of Review

Evidentiary rulings are reviewed for an abuse of discretion. *Antolovich v. Brown Group Retail, Inc.*, 183 P.3d 582, 595 (Colo.App.2007). A district court abuses its discretion if it bases its ruling on an erroneous view of the law. *People v. Wadle*, 97 P.3d 932, 936 (Colo.2004) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)).

## III. Collateral Source Evidence

We are asked to decide whether the collateral source rule prohibited Wal–Mart from submitting to the jury evidence of the discounted amount paid by third parties to satisfy Crossgrove's medical bills. We begin our analysis with a review of the history of the collateral source rule in Colorado.

### A. Common Law Collateral Source Rule

At common law, compensation or indemnity received by an injured party from a collateral source, wholly independent of the wrongdoer and to which the wrongdoer has not contributed, would not diminish the damages otherwise recoverable from the wrongdoer. *Colorado Permanente Medical Group, P.C. v. Evans*, 926 P.2d 1218, 1230 (Colo. 1996) (citing *Kistler v. Halsey*, 173 Colo. 540, 545, 481 P.2d 722, 724 (1971)).

Accordingly, in Colorado,

> the common law did not require setoffs against damage awards. Rather, plaintiffs were allowed to recover the full damages awarded against defendants even though the plaintiffs also received compensation from collateral sources....

> The purpose of the collateral source rule was to prevent the defendant from receiving credit for such compensation and thereby reduce the amount payable as damages to the injured party. To the extent that either party received a windfall, it was considered more just that the benefit be realized by the plaintiff in the form of double recovery than by the tortfeasor in the form of reduced liability.

---

1. He also sought noneconomic losses of $164,250, as well as $32,850 for permanent impairment and disfigurement.

*Van Waters & Rogers, Inc. v. Keelan,* 840 P.2d 1070, 1074 (Colo.1992). Thus, the common law collateral source rule has been described as an "established exception to the general rule that damages in negligence actions must be compensatory." *Wills v. Foster,* 229 Ill.2d 393, 323 Ill.Dec. 26, 892 N.E.2d 1018, 1022 (2008) (quoting 25 C.J.S. *Damages* § 172 (2002)).

To achieve this substantive purpose, the common law collateral source rule barred evidence regarding benefits a plaintiff obtained from sources collateral to the tortfeasor. *See Carr v. Boyd,* 123 Colo. 350, 356–57, 229 P.2d 659, 662–63 (1951) ("Benefits received by the plaintiff from a source other than the defendant and to which he has not contributed are not to be considered in assessing the damages." (quoting 15 Am. Jur. 617)); *see also Moyer v. Merrick,* 155 Colo. 73, 77–80, 392 P.2d 653, 655–57 (1964).

Part of the rationale for the evidentiary prohibition was that "jurors might be led by the irrelevancy to consider plaintiffs' claims unimportant or trivial or to refuse plaintiffs' verdicts or reduce them, believing that otherwise there would be unjust double recovery." *Scott v. Garfield,* 454 Mass. 790, 912 N.E.2d 1000, 1009 (2009) (quoting *Corsetti v. Stone Co.,* 396 Mass. 1, 483 N.E.2d 793 (1985)); *see also Carr v. Boyd,* 123 Colo. at 357, 229 P.2d at 663–64 ("[t]he confusion that could easily arise in the minds of the jurors" as a result of the irrelevant collateral source evidence "may have affected the verdict").

## B. Admissibility of Discounted Collateral Source Payments Under Common Law Collateral Source Rule

■ Wal–Mart contends that the collateral source rule is not implicated by presentation of the discounted amount paid in satisfaction of Crossgrove's medical bills, so long as the source of payment is unidentified. We reject this argument and hold that evidence of the amount paid by third-party payors,[2] and conversely, the amount discounted (or written off) from the billed amount due under a contract between the third-party payor and the provider, is inadmissible under the common law collateral source rule even to show the reasonable value of services rendered, because these payments and discounts constitute collateral sources. *Accord Scott,* 912 N.E.2d at 1009; *Wills,* 323 Ill.Dec. 26, 892 N.E.2d at 1032; *Covington v. George,* 359 S.C. 100, 597 S.E.2d 142, 144 (2004); *Radvany v. Davis,* 262 Va. 308, 551 S.E.2d 347, 348 (2001); *Leitinger v. DBart, Inc.,* 302 Wis.2d 110, 736 N.W.2d 1, 4 (2007).

■ We agree with the Virginia Supreme Court's analysis:

> Payments made to a medical provider by an insurance carrier on behalf of an insured and amounts accepted by medical providers are one and the same. Regardless of the label used, they are payments made by a collateral source and, thus, are not admissible in evidence for that reason.

*Radvany,* 551 S.E.2d at 348.[3]

Additionally, the discounted rate paid by third-party payors generally represents factors besides the reasonable value of services rendered. Although the providers accept less than the billed amount, they enjoy prompt payment, assured collectability, avoidance of collection costs, increased administrative efficiency, and access and marketing to a larger pool of patients. *See Stanley v. Walker,* 906 N.E.2d 852, 863–64 (Ind.2009) (Dickson, J., dissenting); *Radvany,* 551 S.E.2d at 348 (negotiated amounts accepted by providers from insurance carrier "do not reflect the 'prevailing cost' of those services to other patients").

2. In his motion in limine, plaintiff sought exclusion of "evidence of payments by Medicare, Medicaid, or any other health insurer." However, the parties have not argued that the identity of the third-party payor could impact the outcome of the appeal; therefore, that issue is not before us.

3. We recognize that some courts have concluded that the collateral source rule is not implicated if the jury is not told the identity of the payor. *See, e.g., Stanley v. Walker,* 906 N.E.2d 852, 853 (Ind. 2009) (holding amount paid admissible as some evidence of the reasonable value of services insofar as it can be introduced without making reference to insurance). Like the Virginia Supreme Court, however, we conclude that regardless of the label used, they are payments made by a collateral source and thus inadmissible.

Thus, if we authorize consideration of the amount of discounted payments as evidence of the reasonable value of a plaintiff's medical services, juries will receive a distorted, misleading, and incomplete picture unless they are also able to consider the pecuniary value of all the benefits conferred upon health care providers in their symbiotic exchange with medical insurers.

*Stanley*, 906 N.E.2d at 863–65 (Dickson, J., dissenting).

Furthermore, flat fees for services paid by third-party payors may be based on an average cost and length of stay for a diagnosis, rather than the reasonable value of services rendered in the specific instance. *See Smith v. Farmers Ins. Exchange*, 9 P.3d 335, 338 (Colo.2000) (explaining Medicare system).

Thus, in our view, Wal–Mart's approach places plaintiffs in an untenable position. A plaintiff will be hard-pressed to explain why the amount paid may be less than the reasonable value of the services rendered by identifying the factors noted above without disclosing the existence of a collateral source. *See Leitinger*, 736 N.W.2d at 14; *Covington*, 597 S.E.2d at 144. But in the absence of an explanation for the compromised amounts, the jury would be left to speculate as to the source.

> [I]f evidence is proffered that health-care providers initially charged plaintiff a certain amount and later accepted a reduced amount as payment in full, the jury may be confused and left to create an explanation. It may be that jurors would deduce the presence of insurance. Allowing evidence of both the billed and discounted amounts compromises the collateral source rule, confuses the jury, and potentially prejudices both parties in the case. Each jury will resolve the issue differently, leading to inconsistency wherein similarly situated parties will be treated differently.

*Arthur v. Catour*, 216 Ill.2d 72, 295 Ill.Dec. 641, 833 N.E.2d 847, 862–63 (2005) (McMorrow, C.J., dissenting).

■ Further, as the Wisconsin Supreme Court noted, "the collateral source rule protects against the 'ever-present danger that the jury will misuse the evidence [of collateral payments] to diminish the damage award.'" *Leitinger*, 736 N.W.2d at 14 (quoting *Proctor v. Castelletti*, 112 Nev. 88, 911 P.2d 853, 854 (1996)).

Some courts have concluded that the common law collateral source rule does not apply to written-off expenses because the rule "excludes only 'evidence of benefits *paid* by a collateral source.'" *Robinson v. Bates*, 112 Ohio St.3d 17, 857 N.E.2d 1195, 1200 (2006) (quoting *Wentling v. Med. Anesthesia Servs., P.A.*, 237 Kan. 503, 701 P.2d 939 (1985)); *see also Moorhead v. Crozer Chester Med. Ctr.*, 564 Pa. 156, 765 A.2d 786, 791 (2001) ("The collateral source rule does not apply to the illusory 'charge' [of written-off amount] since that amount was not paid by any collateral source.").

However, our supreme court has explained that the common law Colorado collateral source rule excludes from consideration "compensation *or indemnity* received by an injured party from a collateral source." *Kistler*, 173 Colo. at 545, 481 P.2d at 724 (emphasis added); *see also Goble v. Frohman*, 848 So.2d 406, 409 (Fla.Dist.Ct.App. 2003) ("[I]t is clear that a payment is more than the act of remitting money. In this case, the contractual discount constitutes a 'payment made' on [the plaintiff's] behalf because remittance of the discounted amount discharged [the plaintiff's] obligation to his medical providers for treatment."), *approved*, 901 So.2d 830 (Fla.2005).

■ Additionally, in Colorado

> a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor. If the plaintiff was himself responsible for the benefit, as by maintaining his own insurance or by making advantageous employment arrangements, the law allows him to keep it for himself. If the benefit was a gift to the plaintiff from a third party or established for him by law, he should not be deprived of the advantage that it confers.

*Van Waters & Rogers*, 840 P.2d at 1075 (quoting Restatement (Second) of Torts § 920A cmt. b (1979)). Thus, "the focal point of the collateral source rule" "is whether a tort victim has received benefits from a col-

lateral source that cannot be used to reduce the amount of damages owed by a tortfeasor." *Acuar v. Letourneau*, 260 Va. 180, 531 S.E.2d 316, 322 (2000).

■ Accordingly, we conclude Colorado's common law collateral source rule is not limited to protecting merely the cash amounts paid to providers for services rendered; rather, the rule is broad enough to encompass the amount by which a medical provider's bill is discounted pursuant to a contractual arrangement between the provider and third-party payor. *Accord Montgomery Ward & Co. v. Anderson*, 334 Ark. 561, 976 S.W.2d 382, 383–85 (1998) ("gratuitous or discounted medical services are a collateral source not to be considered in assessing the damages due a personal-injury plaintiff"); *Mitchell v. Haldar*, 883 A.2d 32, 38 (Del. 2005) ("[The argument that the plaintiff's recovery was limited to the amount paid by his insurance] reflects a fundamental misunderstanding of the proper application of the collateral source rule to a tortfeasor's responsibility to pay the full reasonable value of the necessary medical treatment caused by the negligent conduct.").

We next consider the impact of the collateral source statute.

### C. Collateral Source Statute

In 1986, the General Assembly modified the common law collateral source rule by statute. The collateral source statute reads:

In any action by any person or his legal representative to recover damages for a tort resulting in death or injury to person or property, the court, after the finder of fact has returned its verdict stating the amount of damages to be awarded, shall reduce the amount of the verdict by the amount by which such person, his estate, or his personal representative has been or will be wholly or partially indemnified or compensated for his loss by any other person, corporation, insurance company, or fund in relation to the injury, damage, or death sustained; except that the verdict shall not be reduced by the amount by which such person, his estate, or his personal representative has been or will be wholly or partially indemnified or compensated by a benefit paid as a result of a contract entered into and paid for by or on behalf of such person. The court shall enter judgment on the reduced amount.

§ 13–21–111.6, C.R.S. 2009.

Wal–Mart contends the collateral source statute is not an evidentiary statute, and thus the amount paid by third parties was admissible as evidence of the reasonable value of services. We agree that section 13–21–111.6 does not address the evidentiary prohibition of the collateral source rule; however, we conclude that the admission of the evidence is still prohibited by the common law collateral source rule.

■ "Our primary duty in construing statutes is to give effect to the intent of the General Assembly, looking first to the statute's plain language. If a statute is clear and unambiguous on its face, then we need not look beyond the plain language...." *Vigil v. Franklin*, 103 P.3d 322, 327 (Colo.2004) (citation omitted).

■ "[S]tatutes in derogation of the common law must be strictly construed...." *Van Waters & Rogers*, 840 P.2d at 1076; *see also Vigil*, 103 P.3d at 327 ("[W]here the interaction of common law and statutory law is at issue, we acknowledge and respect the General Assembly's authority to modify or abrogate common law, but can only recognize such changes when they are clearly expressed.").

We presume the General Assembly was aware that the common law collateral source rule enabled "double recovery," in part, by barring evidence of collateral source contributions. *See Vigil*, 103 P.3d at 327 ("[W]hen it chooses to legislate in a particular area, the General Assembly is presumed to be aware of existing case law precedent.").

■ "[W]hen the legislature speaks with exactitude, we must construe the statute to mean that the inclusion or specification of a particular set of conditions necessarily excludes others." *Id.* (quoting *Lunsford v. W. States Life Ins.*, 908 P.2d 79, 84 (Colo.1995)).

■ Here, the General Assembly enacted a statute which specifically operates only af-

ter the finder of fact has returned a verdict awarding damages to a plaintiff in a personal injury suit. § 13–21–111.6 ("the court, after the finder of fact has returned its verdict stating the amount of damages to be awarded, shall reduce the amount of the verdict"). Therefore, the statute has no effect until the finder of fact returns a verdict; accordingly, it has no impact on the admissibility of evidence during trial.[4]

Had the Colorado General Assembly intended to restrict the scope of the collateral source rule through evidentiary means, it could easily have done so, as other states have. *See, e.g.,* Iowa Code § 668.14(1) ("[T]he court shall permit evidence and argument as to the previous payment or future right of payment of actual economic losses incurred or to be incurred as a result of the personal injury for necessary medical care...."); Ohio Rev.Code Ann. § 2315.20(A) ("In any tort action, the defendant may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the damages that result from an injury, death, or loss to person or property that is the subject of the claim upon which the action is based ...."); *see also* Jamie L. Wershbale, *Tort Reform in America: Abrogating the Collateral Source Rule Across the States,* 75 Def. Counsel J. 346, 350–54 (2008) (identifying various legislative approaches taken to modify collateral source rule).

Instead, the Colorado General Assembly limited the scope of the collateral source rule by providing a post-verdict mechanism for the court to reduce an award based on a plaintiff's receipt of independent compensation for the same injuries. § 13–21–111.6. This approach has been followed in other states as well. *See, e.g.,* Alaska Stat. § 09.17.070(a) ("[a]fter the fact finder has rendered an award to a claimant ... a defendant may introduce evidence of amounts received or to be received by the claimant as compensation for the same injury from collateral sources" and court must accordingly

reduce award where certain conditions met); Fla. Stat. § 768.76(1) ("[If] liability is admitted or is determined by the trier of fact and ... damages are awarded to compensate the claimant for losses sustained, the court shall reduce the amount of such award by the total of all amounts which have been paid for the benefit of the claimant, or which are otherwise available to the claimant, from all collateral sources....").[5]

Because the General Assembly spoke with exactitude in altering the application of the collateral source rule after the verdict is received from the fact finder, but expressed no intention to alter the jury's function in assessing the damages, we conclude the section does not abrogate the common law rule prohibiting evidence of collateral sources at trial.

We note that we are not the first court to conclude, despite statutory modification of the common law collateral source rule providing for post-verdict reduction of damage awards, that collateral source evidence remains inadmissible at trial, even as evidence of the reasonable value of services. *See Goble,* 848 So.2d at 410. The Florida Supreme Court explained the effect of Florida's statute, similar to Colorado's, on the common law collateral source rule as follows:

> The common-law rule prohibited both the introduction of evidence of collateral benefits received and the setoff of any collateral source benefits from the damage award. The common-law rule has been altered in this State by statute. Although *collateral source evidence may not be introduced before the jury,* after entry of the verdict the trial court is required to reduce the amount of damages by the amount of all collateral sources....

*Sheffield v. Superior Ins. Co.,* 800 So.2d 197, 200 n. 3 (Fla.2001) (citations omitted) (emphasis added).

---

**4.** The General Assembly has instituted other limitations on damage awards which are effectuated by the court and without notice to the jury. *See, e.g.,* § 13–64–302(1)(b), C.R.S. 2009 (limiting amount recoverable in medical malpractice ac-

tions, but providing that the "existence of the limitations ... shall not be disclosed to a jury").

**5.** *See also* Wershbale, *supra,* at 353 n. 65 (listing statutes).

### D. Other Colorado Cases Admitting Evidence of Amount Paid as Evidence of Reasonable Value

Finally, Wal–Mart argues that Colorado precedent, decided following enactment of the statutory collateral source rule, requires that the amount actually paid for medical services be admissible as some evidence of the reasonable value. Wal–Mart relies primarily on *Lawson v. Safeway, Inc.,* 878 P.2d 127, 131 (Colo.App.1994). There, a division of this court concluded that the amount actually paid for medical services was admissible as "some evidence of their reasonable value." However, the facts of that case do not support the result urged by Wal–Mart in this case. In *Lawson,* the plaintiff testified to the amount of medical expenses she incurred as a result of her injury, and one of her doctors testified that the charges reflected in his bill were reasonable and necessary.

*Lawson* is distinguishable from this case.[6] First and foremost, the collateral source rule was not implicated or at issue in *Lawson.* Second, the plaintiff there sought submission of the evidence to demonstrate damages; conversely, the function of the collateral source rule is to prevent collateral source evidence from being used to mitigate damages. Third, in *Lawson,* the evidence admitted as "the amount paid" seems to have been the amount *billed* by the medical providers, and there was no evidence of any discount.

The judgment is vacated as to the amount of damages, and the case is remanded for a new trial on the issue of damages, after which the trial court shall adjust the verdict in accordance with the collateral source statute.

Judge ROY and Judge BOORAS concur.

---

6. We are aware that two Colorado federal district court cases have permitted evidence of amounts paid by collateral sources as evidence of reasonable value. *Grabau v. Target Corp.,* 2008 WL 659776 (D.Colo.2008) (unpublished order), and *Walters v. Encompass Insurance Co.,* 2007 WL 3090766 (D.Colo.2007) (unpublished order). Both those cases relied on *Lawson* to conclude that the amount paid is admissible as evidence of the reasonable value of services. To the extent *Lawson* has been interpreted as admitting the amount paid *by a collateral source* as evidence of reasonable value of services, we decline to follow it.