**METROPOLITAN GAS REPAIR SERVICE, INC., Petitioner,**

v.

**Michael KULIK and Carla Rivero, Respondents.**

**No. 79SC315.**

Supreme Court of Colorado.

Dec. 8, 1980.

Rehearing Denied Jan. 5, 1981.

---

Fortune & Lawritson, P. C., Lowell Fortune, Denver, for petitioner.

White and Steele, Michael W. Anderson, Denver, for respondents.

QUINN, Justice.

We granted certiorari to review the court of appeals' decision in *Kulik, et al. v. Public Service Company of Colorado, et al.*, Colo. App., 605 P.2d 475 (1979), which reversed the trial court's direction of a verdict in favor of a heating contractor-defendant in a negligence action by plaintiffs for property damages resulting from an explosion in their home due to a defective heating system. The court of appeals held that the heating contractor's duty to its customer is not limited to the mere installation of a new part in the heating system pursuant to its service contract but rather extends to the exercise of reasonable care and skill in the performance of that service and that its duty may be breached by failing to make a safety inspection of the boiler system. We affirm the judgment of the court of appeals.

Michael Kulik, as administrator of the estate of Darrow Moline, decedent, and Carla Rivero, the decedent's daughter (plaintiffs), commenced an action in negligence against Public Service Company of Colorado, Bell Plumbing and Heating Company and Metropolitan Gas Repair Service (Metropolitan) for property damage to the Moline home resulting from the explosion of a gas operated boiler which furnished hot water heat to the home.[1] The plaintiffs claimed that the negligence of all three defendants consisted of their failure to

---

1. Darrow Moline was the owner of the home at the time of the explosion. He later died of unrelated causes. His daughter, Carla Rivero, also was living in the home and joined in the action to recover for damages to her personal property.

make an inspection of the safety system and to discover a plugged or obstructed safety relief valve during repair work at the home at various times prior to the explosion.

The evidence at trial established that the explosion was caused by a malfunction of either an aquastat [2] or a gas valve,[3] thereby allowing the gas burner to continue to build up pressure in the boiler. The safety relief valve serves the function of releasing pressure from the boiler when it reaches a dangerous level. It accomplishes this function by allowing the pressure to escape from an aperture at the bottom of the valve. The plugged condition in the safety relief valve resulted from a large bolt which had been screwed into the aperture.[4] The head of the bolt protruded externally from the bottom of the valve and was readily visible. The safety relief valve was located near the front of the boiler approximately four-and-one-half feet from the floor and was observable at about eye level. If the safety relief valve had not been plugged, pressure in the boiler would have been released and the explosion would not have occurred.

None of the three defendants performed work directly on the safety relief valve. They did, however, make service calls on various occasions prior to the explosion due to serious difficulties with the heating system. In May 1971 a Public Service repairman had "red-tagged" the system because the burners were maladjusted and created a fire hazard to the floor and walls surrounding the boiler. Thereafter, a repairman from Bell Plumbing and Heating Company corrected this problem and removed the "red tag." In October 1971 another Public Service repairman responded to a "no heat" call at the Moline residence. On this occasion it was determined that the circulation pump motor on the boiler was not working properly. On the following day, October 29, 1971, the decedent called Metropolitan to replace the pump motor. Metropolitan's repairman did so and on his service report wrote that he had "checked boiler." The explosion occurred in April 1974 resulting in extensive destruction to the Moline residence and in significant damage to the personal property therein.

The plaintiffs' theory of liability in negligence was that even though the defendants had not performed work specifically on the safety relief valve, their respective repairmen should have noticed its plugged condition and their failure to do so constituted negligence. At the conclusion of Metropolitan's evidence the trial court granted its motion for a directed verdict. It ruled that Metropolitan's obligation was limited to installing a new pump motor and that it had no duty to inspect the safety relief valve. The plaintiffs' claims against the codefendants, Public Service Company and Bell Plumbing and Heating Company, were submitted to the jury and the jury returned a verdict for those defendants. The court of appeals reversed the directed verdict in favor of Metropolitan and remanded the case for a new trial on plaintiffs' claim against Metropolitan.[5] It held that Metropolitan's contractual relationship with the plaintiffs gave rise to a duty to perform its work with reasonable care and skill, and whether it breached that duty by failing to inspect and observe the plugged safety valve presented a jury question.

2. An aquastat is a device that shuts off the fire under the boiler when the temperature in the boiler reaches a certain level.

3. The gas valve controls the flow of gas into the boiler during the heating operation.

4. The record does not disclose the time or circumstances of the plugging, other than that the bolt was inserted at some time in the past when a standard nipple inside the valve had become brazed. Instead of replacing the nipple with a new one, someone inserted the bolt through the aperture.

5. The court of appeals affirmed the judgments entered on the verdicts in favor of Public Service Company and Bell Plumbing and Heating Company. The plaintiffs did not petition for certiorari review of those judgments. Our writ of certiorari to the court of appeals is directed to Metropolitan's claim that the court of appeals erred in reversing the directed verdict in its favor and in remanding for a new trial on plaintiffs' claim against it.

Metropolitan asserts that the court of appeals erred in two respects. It argues that the nature and extent of its duty to the plaintiffs presented a question of law which was resolved correctly by the trial court but was improperly relegated to a question of fact by the court of appeals. Metropolitan also contends that even if the trial court erroneously directed a verdict in its favor, that error was harmless in view of the jury's verdict in favor of the codefendants on the identical issues raised against it. We are not persuaded by these contentions.

## I. THE DEFENDANT'S DUTY

In urging reversal Metropolitan points to the statement in the court of appeals' opinion that "once the existence of a duty is established, the particular scope of that duty is a question for the trier of fact." If this statement is intended as a description of the allocation of function between court and jury in the determination of the standard or measure of a defendant's duty, it is incorrect. *E. g., Restatement (Second) of Torts* § 328B (1965).[6] If, on the other hand, the statement was meant to describe the jury's role in determining whether in fact a defendant has breached a duty to a plaintiff and thereby caused damage, it represents a correct statement of law. *E. g., Restatement (Second) of Torts* § 328C (1965). In any event, we elect to address *ab initio* the merits of Metropolitan's claim that the court of appeals erred in reversing the trial court's direction of a verdict in its favor.

The trial court's direction of a verdict for Metropolitan was based on the underlying assumption that the contract between the decedent and Metropolitan limited the latter's duty only to the installation of a new pump motor. In so concluding the trial court erred.

■■■ The contractual obligation is not the touchstone of civil liability in tort. It is only the matrix from which an independent tort obligation may arise. *See Lembke Plumbing and Heating v. Hayutin,* 148 Colo. 334, 366 P.2d 673 (1961). In this case the service contract created consensual obligations between the decedent and Metropolitan in relation to the boiler system in decedent's home. It did not, however, transform Metropolitan's contractual obligation into the measure of its tort liability arising out of its contractual performance. *Lembke Plumbing and Heating v. Hayutin, supra; Wright v. Creative Corp.,* 30 Colo. App. 575, 498 P.2d 1179 (1972).

■■■ Where damage is to be foreseen, there is a duty to act so as to avoid it. *E. g., MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050 (1916). Whether a defendant owes a legal duty to a particular plaintiff is a question of law. *See, e. g., DeCaire v. Public Service Co.,* 173 Colo. 402, 479 P.2d 964 (1971); *Lembke Plumbing and Heating v. Hayutin, supra; Roessler v. O'Brien,* 119 Colo. 222, 201 P.2d 901 (1949); *Baird v. Power Rental Equipment, Inc.,* 35 Colo.App. 299, 533 P.2d 941 (1975), *aff'd,* 191 Colo. 319, 552 P.2d 494 (1976). The court determines, as a matter of law, the existence and scope of the duty—that is, whether the plaintiff's interest that has been infringed by the conduct of the defendant is entitled to legal protection. *See*

6. This case does not involve the issue of tort responsibility for damages to an arguably unforeseen plaintiff. *See Prosser, The Law of Torts* 254–59 (4th ed. 1971). In those cases where the evidence establishes that the defendant was negligent in creating an unreasonable risk to A, but the negligent conduct caused injury to B, the issue of defendant's liability is resolved by application of principles of foreseeability. What the jury determines in these cases is whether the defendant's negligence was a "cause" of injury to the plaintiff. In making this determination it considers whether the injury to a person in the plaintiff's situation was a reasonably foreseeable consequence of the defendant's negligence. *Chutich v. Samuelson,* 187 Colo. 155, 529 P.2d 631 (1974); *Colo. J.I. (Civil) 2d* 9:30, Notes on Use (1980). Some of the analytical difficulties in treating foreseeability as an element of causation, rather than as an element of duty, are discussed in Annot., 100 A.L.R.2d 942 (1965).

In the instant case the issue of duty relates to its existence and scope—that is, whether the defendant's legal duty to plaintiffs was restricted to its contractual obligation to install the motor pump and to that function only, or extended to the exercise of reasonable care and skill in performing that function, including a safety inspection of the boiler system.

Restatement (Second) of Torts § 328B (1965); 3 *J. Dooley, Modern Tort Law* § 45.02 at 230 (1977); *L. Green, Rationale of Proximate Cause* 66 (1927); 2 *Harper and James, The Law of Torts* § 18.8 at 1058 (1956); *W. Prosser, The Law of Torts* 206 (4th ed. 1971). In negligence cases the duty is to use reasonable care in light of the apparent risk. *E. g., Prosser, supra* at 324.

The flaw in the trial court's direction of a verdict lies in the application of the contractual standard of performance in measuring the defendant's duty in tort. In *Samuelson v. Chutich*, 187 Colo. 155, 159, 529 P.2d 631, 633–34 (1974), we adopted Justice Traynor's statement in *Gagne v. Bertram*, 43 Cal.2d 481, 275 P.2d 15 (1954), on a contractor's duty to its customer in the performance of a service contract:

> " 'The services of experts are sought because of their special skill. They have a duty to exercise the ordinary skill and competence of members of their profession, and a failure to discharge that duty will subject them to liability for negligence. Those who hire such persons are not justified in expecting infallibility, but can expect only reasonable care and competence.' "

*See, e. g., Driscoll v. Columbia Realty-Woodland Park Co.*, 41 Colo.App. 453, 590 P.2d 73 (1978); *Russell v. Jacksonville Gas Corp.*, 117 So.2d 29 (Fla.Dist.Ct.App.1960); *Flint & Walling Mfg. Co. v. Beckett*, 167 Ind. 491, 79 N.E. 503 (1906); *Montgomery Ward v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947).

Therefore the court of appeals correctly held that Metropolitan's contractual relationship with the decedent gave rise to a common law duty to perform its work with reasonable care and skill. The issue whether or not Metropolitan actually breached that duty and thereby caused damage to the plaintiffs' legally protected interest is a question of fact. Ordinarily, that question must be resolved by the jury unless there is insufficient evidence to sustain a verdict for the plaintiffs, in which case a directed verdict for the defendants would be proper.

## II. *THE DIRECTED VERDICT*

The propriety of the directed verdict must be measured by the most favorable evidence test. If, when the evidence is viewed in the light most favorable to the plaintiffs, and all reasonable inferences are drawn therefrom in favor of the plaintiffs, there is insufficient evidence from which reasonable persons could conclude the defendant negligently caused damage to the plaintiffs' property, then a verdict should be directed for the defendant. *E. g., Safeway Stores, Inc. v. Langdon*, 187 Colo. 425, 532 P.2d 337 (1975); *Romero v. Denver & Rio Grande W. Ry. Co.*, 183 Colo. 32, 514 P.2d 626 (1973); *Gossard v. Watson*, 122 Colo. 271, 221 P.2d 353 (1950); *Roessler v. O'Brien, supra.* However, the issue of negligence presents a question of law in only the clearest of cases and should normally be reserved for the jury unless the facts are undisputed, and it is plain that reasonable persons can draw but one inference from them. *E. g., Blount v. Romero*, 157 Colo. 130, 401 P.2d 611 (1965); *Seward v. York*, 124 Colo. 512, 239 P.2d 301 (1951). We conclude that the trial court improperly directed a verdict in this case.

At trial it was virtually undisputed that the safety relief valve provides final protection against an explosion when other parts of the boiler system are not functioning properly and that a plugged safety relief valve creates a serious hazard to the boiler system. The plaintiffs' expert witness testified that if he had been hired to replace a pump motor, he would have checked all the safety mechanisms on the boiler system, especially the safety relief valve. A Metropolitan serviceman admitted that in replacing a pump motor he would make a visual inspection of the safety relief valve so long as it was in plain view. The record here furnishes evidential support for reasonable inferences that the safety relief valve was in plain view to Metropolitan's serviceman when the pump motor was installed and that its plugged condition was apparent upon visual examination.

■ Moreover, Metropolitan's invoice to the decedent for the installation of the pump motor on October 29, 1971, provides further evidence that a directed verdict was improper in this case. That invoice stated that Metropolitan had replaced the pump motor and checked the boiler.[7] The safety relief valve was in direct view of the boiler. This evidence contributes to the factual basis from which a jury reasonably could conclude that the installation of the pump motor in the boiler system and the examination of the boiler, without a simultaneous inspection of the safety relief valve, constituted a breach of the defendant's duty to use reasonable care and skill in the performance of its service contract.

### III. HARMLESS ERROR

Metropolitan next contends that even if the trial court erroneously granted its motion for a directed verdict, that error was harmless. It argues that the plaintiffs relied on the very same theory of liability against the codefendants, Public Service Company and Bell Plumbing and Heating Company, and the jury returned verdicts for those codefendants. We find no harmless error here.

■ The doctrine of res judicata does not bar a retrial of plaintiffs' claim in negligence against Metropolitan. Res judicata is a claim preclusion and renders an existing judgment conclusive as to the rights of the parties or their privies in any subsequent proceeding based on the same cause of action. E. g., Pomeroy v. Waitkus, 183 Colo. 344, 517 P.2d 396 (1973); Falkenburg v. Sternberg, 154 Colo. 134, 388 P.2d 771 (1964); Bankers and Shippers Insurance Co. v. Curtis, Inc., 42 Colo.App. 399, 598 P.2d 520 (1979); Pottern v. Bache Halsey Stuart, Inc., 41 Colo.App. 451, 589 P.2d 1378 (1978). Metropolitan's services were performed on dates different from the service calls of the codefendants and also involved projects distinct from those performed by the codefendants. The plaintiffs' claim against Metropolitan is not identical to the plaintiffs' claim against the codefendants and Metropolitan cannot assert, under 'the rubric of res judicata, that the issue of its negligence was decided by the jury when it returned a verdict in favor of the codefendants.

■ Nor does the doctrine of collateral estoppel preclude relitigation of plaintiffs' claim against Metropolitan. Collateral estoppel is a form of issue preclusion attaching to a subsequent adjudicatory proceeding. It requires that there be an identity of issue, an identity or privity between those parties against whom the doctrine is asserted, a judgment on the merits, and a full and fair opportunity to litigate the issue in the prior proceeding. Pomeroy v. Waitkus, supra; Mangus v. Western Casualty and Surety Co., 41 Colo.App. 217, 585 P.2d 304 (1978). Here, there is not an identity of issue with respect to the prior adjudication on the merits in favor of the codefendants.

The plaintiffs' claim against Metropolitan, although stemming from the same theory of negligence urged against the codefendants, was dissimilar in fact and law to the claims against these codefendants. It is not our function to second guess whether that jury would have resolved the issue of Metropolitan's negligence in the manner identical to its resolution of the claims against the two codefendants. Our function is limited to the consideration of Metropolitan's contention that the directed verdict in its favor was harmless error. We conclude that, far from harmless, the error requires a new trial.

The judgment of the court of appeals is affirmed and the cause is returned to the court of appeals with directions to remand the case to the district court for a new trial.

---

7. On November 1, 1971, two days after the first service call, Metropolitan installed a new thermostat in the living room of the Moline residence and, according to the invoice for that service, checked the operation of the boiler. Apparently the examination of the boiler operation on this occasion did not include a visual inspection of the safety relief valve.