**Efren RUMBAOA and Teresita Rumbaoa, Plaintiffs,**

**Fireman's Fund Insurance Companies, Plaintiff–Intervenor,**

v.

**J. RUDNICK & SONS, INC.; Klenk & Miller, Inc.; Proctor & Schwartz, Inc.; WBSCO, Defendants.**

**Civ. No. 92–00144 BMK.**

United States District Court, D. Hawai'i.

July 26, 1994.

Charles J. Ferreira, Fernando L. Cosio, Honolulu, Hawai'i, for plaintiff.

Arthur S.K. Fong, Peter C.K. Fong, Honolulu, Hawai'i, for intervenor plaintiff.

James E. Duffy Jr., Douglas H. Knowlton, Fujiyama Duffy & Fujiyama, Honolulu, Hawai'i, for defendant Proctor & Schwartz.

Jeffrey H.K. Sia, Rhonda A. Nishimura, Libkuman Ventura Ayabe Chong & Nishimoto, Honolulu, Hawai'i, Earl R. Norris, Oldaker Oldaker & Norris, Albuquerque, NM, for defendant WBSCO.

### ORDER GRANTING DEFENDANT WBSCO'S MOTION FOR SUMMARY JUDGMENT

KURREN, United States Magistrate Judge.

### I. FACTS

Plaintiff Efren Rumbaoa ("plaintiff"), a garnett machine operator, was employed at Coyne Mattress Company, Ltd. ("Coyne") on the date of an incident, March 14, 1990, in which plaintiff's arm was severely injured. A garnett machine is designed to transform bales of raw cotton into blended laps for use in mattress bedding.[1] The machine uses large rotating cylinders "clothed" with wire blades to process the cotton. While inserting the nozzle of an air hose into a small opening in the side of the machine for cleaning purposes, an unorthodox cleaning procedure, the air hose was caught by the moving cylinders of the machine and pulled inside along with the most of his arm.

Defendant WBSCO's business is the manufacture and supply of machinery and equipment used by manufacturers of mattresses. WBSCO's relationship with Coyne involved WBSCO supplying, upon request from Coyne, "reclothed" cylinders, i.e. cylinders with new blades, as well as other parts for the machines in Coyne's factory. On one occasion, WBSCO helped install and gauge the replacement cylinders into the garnett machines. In addition, WBSCO offered to help Coyne sell some of its used machinery to other users. As part of WBSCO's efforts to assist Coyne to re-sell garnett machines, WBSCO offered to inspect those machines Coyne sought to discard to determine their fitness for resale. The garnett machine in which plaintiff's arm was injured was not one of those WBSCO had attempted to inspect and market for Coyne.

### II. CLAIMS

Plaintiff asserts three claims against WBSCO: 1) Negligent breach of a duty to warn—the duty to warn arising out of WBSCO's relationship with plaintiff's employer Coyne; 2) strict products liability; and 3) breach of warranty. WBSCO moves for summary judgment on all three claims. Plaintiff's memorandum in opposition, in which plaintiff-intervenor Fireman's Fund Insurance Companies joins,[2] does not dispute WBSCO's motion for summary judgment on claims two and three. Accordingly, and because it is clear from WBSCO's motion that WBSCO cannot be held liable for either strict products liability or breach of warranty, the court grants the motion on those two claims. For the reasons discussed below, WBSCO's summary judgement motion is granted on plaintiff's negligence claim, as well.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. Id. at 322, 106 S.Ct. at 2552.

If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material

---

1. The garnett machine involved in this case was manufactured by defendant Proctor & Schwartz, Inc. and sold to Coyne in 1931.

2. Fireman's Fund Insurance Companies is the worker's compensation insurer for Coyne. Fireman's Fund claims a lien against plaintiff's recovery in this lawsuit for the amount previously paid to plaintiff.

fact, the non-moving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment. *T.W. Electrical Serv. v. Pacific Elec. Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir. 1987) (citation omitted). Rule 56(e) requires the non-moving party to set forth, by affidavit or as otherwise provided in Rule 56, *"specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. Rule 56(e) (emphasis added). At least some " 'significant probative evidence tending to support the complaint' " must be produced. *T.W. Electrical Serv.,* 809 F.2d at 630 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). Legal memoranda and oral argument are not evidence and, therefore, fail to create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

■ The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Moreover, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1403, 89 L.Ed.2d 538 (1986) (footnotes omitted). Indeed, "if the factual context makes the non-moving party's claim *implausible,* the party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.) Of course, all evidence and inference to be drawn therefrom must be construed in the light most favorable to the non-moving party. *T.W. Electrical Serv.,* 809 F.2d at 630–31. Nevertheless, the standard for the grant of summary judgment reflects the standard governing the grant of a directed verdict: Whether "reasonable minds could differ as to the import of the evidence." *Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). As set forth below, even viewing the evidence presented in the light most favorable to him, plaintiff has failed to demonstrate facts to establish an element essential to his case, a duty owed by WBSCO to Coyne's employee, an element that plaintiff will bear the burden of proof at trial.

## IV. *DISCUSSION*

■ In this diversity action, the court looks to the law of Hawaii to determine the negligence issues raised by the present motion. *Erie RR. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In Hawaii, as in every other jurisdiction, "[i]t is fundamental that a negligence action lies only where there is a duty owed by the defendant to the plaintiff." *Bidar v. Amfac, Inc.,* 66 Haw. 547, 551, 669 P.2d 154, 158 (1983). Summary judgment proceedings are especially useful because "[w]hether there is a relationship between the parties such that the community will impose a legal obligation on the defendant for the benefit of the plaintiff is entirely a question of law." *Doe v. Grosvenor Properties,* 73 Haw. 158, 829 P.2d 512, 514–515 (1992); *see also Knodle v. Waikiki Gateway Hotel, Inc.,* 69 Haw. 376, 742 P.2d 377 (1987). A duty is found to exist under various circumstances, two of which plaintiff argues.

■ One of plaintiff's arguments relies upon the existence of a special relationship between WBSCO and Coyne. Such a relationship would need to exist, however, such that WBSCO had control over Coyne's factory or machinery, in order for a duty to be imposed upon WBSCO to protect plaintiff from harm resulting from a machine under Coyne's control. *See Seibel v. City & County of Honolulu,* 61 Haw. 253, 602 P.2d 532 (1979) (special relationship necessary between defendant and either the third person who may threaten harm or the victim, in

order to impose duty upon defendant to protect victim.) Although plaintiff weakly attempts to assert that an agency or joint venture relationship exists between WBSCO and Coyne, neither of which relationship would impose the hoped for duty upon WBSCO, the court finds no evidence of any custody or control of Coyne's machinery or employees that would create a special relationship between WBSCO and Coyne or Rumbaoa. *Cf. Kole v. Amfac, Inc.,* 69 Haw. 530, 750 P.2d 929 (1988) (Owner-lessor of condominium unit has duty to warn lessee of known hazardous condition in condominium common area.)

■ Plaintiff's other argument relies on section 324A of the Restatement 2d of Torts in support of its assertion that WBSCO had a duty to perform inspections on the garnett machines in Coyne's factory and to perform those inspections prudently and with reasonable care. Section 324A provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Plaintiff's argument relies, therefore, primarily on the assertion that WBSCO had rendered services to Coyne of such a nature as would impose a duty to warn of dangers associated with the garnett machine where plaintiff lost his arm. Specifically, plaintiff asserts that WBSCO should have warned of the danger inherent in an opening, into which plaintiff inserted his arm, in the side of the machine caused by the removal of a wind roll (an "unclothed" smaller cylinder) from the garnett machine. The removal of the wind roll was a modification to the garnett machine done by a party other than WBSCO sometime during or after the machine's sale to Coyne. Moreover, no evidence exists that the services or parts supplied by WBSCO concerned the operation or replacement of the wind rolls on the garnett machines.[3]

Despite the absence of work performed on the garnett machine which would directly relate to the danger complained of, plaintiff asserts that:

[T]here are a number of letters written by WBSCO's Vice President/General Manager Douglas D. Moody which raise substantial questions as to the legal relationship between WBSCO and Coyne Mattress which establish that WBSCO performed substantial repair work and on-site inspections giving rise to a duty to perform these inspections prudently.[4]

---

3. WBSCO's services to Coyne consisted of the following undisputed facts contained in the affidavit of Douglas Moody, WBSCO's General Manager:

WBSCO has never manufactured, distributed nor sold Garnett machines to Coyne.
WBSCO has occasionally sold new or reconditioned replacement parts to Coyne for its Garnett machines which are in all respects like the parts they replace.
In 1985, a WBSCO employee installed and gauged replacement rollers in Coyne's Garnett machines. The reconditioned rollers were identical, in all respects, to the existing rollers of Coyne's Garnett machines.
WBSCO did not manufacture, remove or modify the rolls, including the wind rolls, in Coyne's Garnett machines. WBSCO reclothed the cylinders which is a reconditioning operation. WBSCO has not been consulted at any time by Coyne about any mesh, screen or other guard

in, at, or around the site on the Garnett machine where Plaintiff ... was injured.

4. Plaintiff attaches letters dating from 1968 to 1978. WBSCO, however, points out that defendant WBSCO is a separate entity from Western Bedding Supply Company, the company that authored the five letters dated prior to 1970. Plaintiff having offered no evidence to the contrary, the court agrees that Western Bedding Supply Company is not a party to this action and is not a successor in interest named for any service responsibilities that may have been assumed by the old company. Accordingly, only those letters dating after 1974 will be considered for the purposes of plaintiff's opposition. Notwithstanding the irrelevance of the earlier letters, the court's review of those letters reveals no actual undertaking by Western Bedding Supply Company that would impose, or even relate to, a duty to warn of a possible problem concerning the absence of a wind roll on the garnett machine at issue.

Initially, the court notes that no written contract exists imposing an ongoing obligation upon WBSCO to perform inspections of the machinery in Coyne's plant for any purpose. The only time WBSCO supplied parts or performed services was at Coyne's request. Plaintiffs argue, however, that because WBSCO inspected specific machines that Coyne was trying to sell, WBSCO assumed a duty to provide inspections of all of the machines in Coyne's plant, presumably on a regular basis. In the alternative, plaintiff argues that the one time that a WBSCO employee helped to replace the reclothed cylinders, WBSCO's employee should have noticed the missing wind roll and warned of the inherent dangers.

First, the mere fact that WBSCO was going to inspect certain equipment for possible sale, or act as an agent for that sale, could never be construed as evidence that WBSCO was under a duty to provide a safe workplace for Coyne's employees. Moreover, any machine inspections were related to the machines' potential future use at locations other than at Coyne's factory and by employees other than Coyne's.

Second, WBSCO's performance of a reclothing service for Coyne on the cylinders of the garnett machines does not suggest that WBSCO undertook to perform a comprehensive inspection of the garnett machine at Coyne's factory or that WBSCO had any further duties to Coyne or its employees.

Plaintiff cites to *Metropolitan Gas Repair Serv., Inc. v. Kulik,* 621 P.2d 313 (Colo.1981), for the proposition that even though a contractor did not repair the faulty part, its activities imposed upon it a duty to inspect the entire system. Plaintiff asserts that this case "stands on all fours" as compared to the facts at issue. Plaintiff is mistaken.

The facts in *Kulik* described a heating contractor who had a written service contract to maintain the boiler system in a private home. Two and one-half years after the contractor's employee had replaced the circulation pump and indicated that he had "checked boiler," the boiler system exploded, due in part to a plugged relief valve unrelated to the water pump. The court found, however, that the plugged valve would have been discovered upon a reasonable inspection of the whole system, an inspection the contractor's employee indicated that he had performed and that would have been called for by the written agreement, in any event.

The two most distinguishing factors are: 1) in *Kulik,* a written contract existed which imposed an *ongoing* duty to service the *entire* boiler system that caused the harm, whereas, in the case at bar, no such contract related to the garnett machine which caused the harm to plaintiff and 2) the contractor in *Kulik* indicated that he did check the boiler on a previous occasion, whereas, WBSCO, if it had any contact with the offending garnett machine, it was merely to supply replacement parts; WBSCO never indicated that it had performed any sort of overall check on the garnett machine. WBSCO performed no act which would have caused Coyne or Rumbaoa to rely on WBSCO for the proper manner in which to clean the garnett machine, whereas the homeowner in *Kulik* entered into a written contract for the very purpose of relying on the expertise of the heating contractor to ensure that the boiler system operated safely. Moreover, in the instant case, plaintiff's injuries occurred in 1990, while the last letter that even remotely suggests that WBSCO inspected any machine of Coyne's, was dated fifteen years earlier.

It is plaintiff's burden to prove the existence and scope of a relationship or undertaking that would give rise to a duty. *Doe,* 829 P.2d at 518. The documents submitted by plaintiff are clearly insufficient to create a genuine issue of material fact on this issue. WBSCO's motion for summary judgment is GRANTED.

IT IS SO ORDERED.