IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 13, 2000

## CITY OF SPRINGFIELD v. HOBSON CLEANING, INC., ET AL.

**Appeal from the Circuit Court for Robertson County**
**No. 8206     James E. Walton, Judge**

---

**No. M2000-01114-COA-R3-CV - Filed July 5, 2001**

---

This case involves a contract between the City of Springfield and defendant, United Services Unlimited, formerly Hobson Cleaning, to clean the floors of the police department. Defendant appeals whether the evidence preponderated against the judgment of the trial court. We affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Martin C. Giner, Nashville, Tennessee, for the appellants, Hobson Cleaning, Inc., and United Services Unlimited, Inc.

J. Russell Farrar, Robyn Beale Williams, Nashville, Tennessee, for the appellee, City of Springfield.

**MEMORANDUM OPINION**[1]

The City of Springfield police department moved into a new building in 1994. Bids were solicited by the chief of police, Mike Wilhoit, to contract for cleaning and maintenance services for the floors on the first and second story of the building. In response, Hobson Cleaning wrote Mr. Wilhoit in February 1994:

Per our conversation we agree to maintain your business premises as follows:

---

[1] Tenn. R. Ct. App. 10 states:

The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

1) Dust mop
2) Mopping
3) Buffing
4) Scrub
5) Recoat
6) Strip
Our price for these services rendered is $1200.00 per year, payable $100.00 a month. This includes upstairs & downstairs.

After bids were received, Mr. Wilhoit sent a memorandum on March 21, 1994 to the city manager, Doug Bishop, recommending acceptance of Hobson's proposal, which stated:

During February I contacted Hobson Cleaning, Inc., ServPro Industries, Dorris Cleaning and O.L. Gilley. I requested they provide me with a cost for maintenance of the tile floors upstairs and downstairs. They were asked to come into the police department once a month and clean, buff and wax the floors. They were also asked to strip the floors as needed.

The defendant's bid was accepted and they performed the contract for that year.

Bids were re-let again in 1995 and Hobson's bid was accepted.[2] After accepting the contract again in 1995, Hobson Cleaning wrote to Mr. Wilhoit "We propose to sweep, damp mop and buff all hard surface floors monthly and scrub and strip as necessary for $100.00 per month."

There was no other evidence in the record of the actual solicitation for bids or any other contract existing between the parties which more specifically details the obligations. However, the parties agree that the contract provided that Hobson would provide all chemicals, equipment and labor to maintain the floors on the first and second story.

The floors were different. The floor on one level was apparently a very high quality linoleum from Sweden which was a no wax/no strip material. In the spring of 1996, the defendant stripped the flooring, and damage resulted. The flooring was discolored and damaged. The testimony shows that the stripping material applied to the linoleum, a product called Brute, brought the linseed oil in the flooring to the surface and caused the discoloration.

After a bench trial, the City of Springfield was awarded $15,615.32 after the judge found that "it was necessary to replace the entire floor; therefore, Springfield Police Department is entitled to the full replacement cost of the floor." The defendant appeals the judgment that it is liable for the

---

[2]During the pendency of the contract, Hobson Cleaning, which was owned by Robert Hobson, was bought out by the owner's father, Don Hobson, and renamed United Services Unlimited, Inc. The renamed company continued to fulfill the contract. Robert Hobson remained on as an employee and supervisor. We will continue to refer to the defendant company as Hobson for clarity.

damage and asserts that such a finding preponderates against the evidence. For the reasons below, we disagree and affirm the judgment.

## I.

This is an appeal from a decision made following a bench trial, therefore, Tenn. R. App. P. 13(d) governs our review. Accordingly, "review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). No presumption of correctness attaches to the trial court's conclusions of law. *Hansel v. Hansel,* 939 S.W.2d 110, 111 (Tenn. Ct. App. 1996).

Additionally, the weight given to a witness's testimony lies in the first instance with the trier of fact, and this court must accord great weight to the trier of fact's decisions on issues of credibility. *Randolph v. Randolph,* 937 S.W.2d 815, 819 (Tenn. 1996); *Mays v. Brighton Bank*, 832 S.W.2d 347, 352 (Tenn. Ct. App. 1992); *Sisk v. Valley Forge Ins. Co.*, 640 S.W.2d 844, 849 (Tenn. Ct. App. 1982).

## II.

The trial court found that the damage was caused by the chemical Hobson chose to use and that defendants were "liable for the damage cuased" to the floor, and defendants appeal this judgment of liability, asserting that the evidence was not sufficient to support such a finding. Defendant strongly argues in its brief that it was never advised that the floors were not tile and could not be waxed or stripped. Robert Hobson even testified that he thought the floors looked like marble. Defendant asserts that the plaintiff should have advised it of the special care needed for this flooring.

In this case, there was a contract for Hobson Cleaning to provide professional services for payment. Therefore, it had a duty to perform those services in a workmanlike manner, exercising the ordinary skill and competence of others providing the same services. *Benson v. Tennessee Valley Elec. Coop.*, 868 S.W.2d 630, 638 (Tenn. Ct. App. 1993) (citations omitted). More importantly, "the services of experts are sought because of their special skill. They have a duty to exercise the ordinary skill and competence of members of their profession." *Id*. (quoting *Metropolitan Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313, 317-18 (Colo. 1980)). Hobson Cleaning held itself out to be a professional floor cleaning and maintenance service provider and, therefore, it had a duty to perform those services in a professional manner, using the skills and expertise of others providing the same services.

Chief Wilhoit testified that he knew nothing about cleaning or maintaining floors and did not know in this instance that the flooring could not be waxed or stripped. Additionally, there was no janitor on the staff; therefore, the bids were let to have someone professionally clean and maintain the new floors.

Under the contract, Hobson Cleaning was to supply all of the materials, cleaning agents and labor. Complete discretion was left to Hobson Cleaning as to what products, if any, to use in cleaning and maintaining the floors. Mr. Hobson had approximately 18 years experience cleaning floors and working with chemicals. Moreover, he had been using the stripper Brute for approximately 15 years and testified he was very familiar with the product.

Robert Hobson testified that when purchasing chemicals he received a Material Safety Data Sheet informing him how to work with the chemical and what types of materials it can and cannot be used on. Terry Comstock, who sold the stripping chemical Brute to Hobson Cleaning, testified that he gave defendant the Material Safety Data Sheet stating on what types of flooring the product could not be used.

The testimony of the seller of the flooring established that the floor in question was a very high quality grade and that one could tell by looking at the floor that it was not tile. Hobson's witness, a representative of the manufacturer of Brute testified that one could not tell by looking at it that the flooring was a no wax and no strip product. Faced with this contradictory evidence, the trial court could attribute either one. However, resolution of this factual issue is not necessary to the ultimate outcome because Hobson, a company hired to clean and maintain the floor, was required to have more knowledge of flooring than the average observer and because Hobson had much more contact and experience with this floor than just looking at it.

Hobson Cleaning was not unfamiliar with this floor. In fact, Robert Hobson testified:

> The general contractor finished the building. We went in to make it presentable for the police department, and then we used a cleaner on it to remove the soil and dirt, and then we put the wax down, and then at that time I think – I don't recall the lapse of time in there, whether we started services immediately or a period of months before the chief and I got together.

Additionally, Hobson Cleaning had the contract to clean the floors since April 1994 and performed the contract without problems from April 1994 until this damage resulted in the Spring of 1996.

Defendant claims that it was never advised that there was any special care needed to maintain this flooring. Yet, in addition to the chief testifying that he knew nothing about the flooring, Robert Hobson testified:

> Q: Did you ever ask Chief Wilhoite what type of floor it was?
> A: No, ma'am. I don't recall.
> Q: Did you ever ask him what type of chemicals to use on it?
> A: No ma'am.

We do not find that the evidence preponderated against finding the defendant was liable for the damage to the flooring in light of the defendant contracting that it could perform professional services, holding itself out to be a professional floor cleaner, the experience of the defendant, the previous extended exposure to maintaining this flooring, the failure to question whether any special care was needed, and choosing the chemical which caused the damage. Therefore, we affirm the judgment of liability.

III.

Next, Hobson Cleaning asserts that the plaintiff should have mitigated its damages by repairing the floor instead of replacing it. Hobson Cleaning relies on the testimony of its "expert" that the floor could have been repaired by scrubbing it and placing a few coats of wax on it. The court concluded that the flooring could not be repaired, but had to be replaced and entered a judgment accordingly for the replacement cost. We do not find that the evidence preponderates against this finding.

The damages testimony consisted of the testimony of witnesses who viewed the damage to the flooring and the parties' "experts"- the seller of the flooring and a representative of the manufacturer of the stripper.

It was undisputed that the actual damage to the flooring consisted of discoloration in several places. The extent of the damage was disputed. The testimony of the owner of Furniture Center, William Jones, the seller of the flooring, established that the flooring was a very high quality grade from Sweden. Mr. Jones has over 50 years experience with flooring. He testified that the entire flooring had to be replaced because, otherwise, it would not match because the dye lots would differ. He explained that dye is mixed for each lot of material manufactured and that these lots can and do differ. Therefore, if the flooring is from different lots, it may not match. Specifically, he stated:

> Q: Was it necessary to replace the entire floor?
> A: Yes.
> Q: And why is that?
> A: Because of the dye lot of the material. If you replace one room, you have to replace it all or it will not color match.
> Q: Okay. So even as the defendant claims, although the entire floor wasn't damaged, it would also need to be replaced?
> A: Right.

On the other hand, the defendant's expert, Terry Comstock, a representative of Brulen Corporation, the manufacturer of the stripper, testified that the damages could have been repaired by scrubbing and placing on it 3 to 4 coats of floor finish, but also stated he did not see all of the damaged areas. Based on this testimony, defendant argues that the plaintiff should have mitigated the damage by repairing the floor and/or replacing only the damaged portions and not the entire floor.

However, Mr. Hobson testified that his own attempts to repair the flooring were unsuccessful. The court considered all the testimony and held:

> With regard to damages, there has been some testimony that only a portion of this floor was damaged. As Mr. Comstock stated, some of it could be handled in such a way as you couldn't tell it had been damaged. Yet there's the testimony of Mr. Robert Hobson that efforts were made to correct the situation, and it was not corrected.
>
> There's the testimony of Mr. Jones that because of the dye lots in the flooring material, that if you were to replace part of it, you have to replace all of it. The Court gives credit to that testimony.

We find the evidence does not preponderate against this finding. To the extent there was testimony that the flooring did not have to be replaced in its entirety and could have been repaired, there was also contradictory testimony by the defendant that efforts to repair the flooring were not successful. Finally, there was testimony that replacement of only portions of the floor would leave the plaintiff with a less satisfactory floor than it had before the damage. Therefore, the award of the amount of damages necessary to replace the flooring is affirmed.

IV.

For the reasons stated herein, we affirm the judgment against defendant for $15,615.32 for the cost of replacing the flooring damaged by defendant stripping it. This cause is remanded to the trial court for any further actions if necessary. Costs of this appeal are taxed to the appellant, United Services Unlimited and its predecessor in interest Hobson Cleaning, Inc., for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE