Diane **LEWIS**, personal representative for the estate of Margaret A. Sena; Dale Sena; Dave Sena; John Connors; and Ohio Casualty Insurance Company, Plaintiffs–Appellants,

v.

**EMIL CLAYTON PLUMBING CO., Defendant–Appellee.**

No. 99CA2166.

Colorado Court of Appeals, Div. III.

Nov. 9, 2000.

Rehearing Denied Jan. 18, 2001.

Certiorari Denied June 25, 2001.

Douglas J. Traeger, Glendale, CO, for Plaintiffs–Appellants Diane Lewis, personal representative for the estate of Margaret A. Sena; Dale Sena; Dave Sena; and John Connors.

David M. Bryans, Denver, CO, for Plaintiff–Appellant Ohio Casualty Insurance Company.

Campbell, Latiolais & Ruebel, P.C., Colin C. Campbell, Denver, CO, for Defendant–Appellee.

Opinion by Judge MARQUEZ.

In this action for wrongful death and property losses, plaintiffs, Diane Lewis, personal representative for the estate of Margaret A. Sena (decedent); Dale Sena; Dave Sena; John Connors; and Ohio Casualty Insurance, appeal from a summary judgment in favor of defendant, Emil Clayton Plumbing Company. We affirm.

Approximately five weeks after defendant replaced a water heater in the basement of the Sena home, the house was destroyed in a massive gas explosion, killing decedent. The explosion resulted from the failure of a flexible gas connector on a basement stove. Plaintiffs filed this action against defendant alleging that defendant had installed a water heater in the basement of the Sena premises without obtaining a building permit. They also alleged that defendant had negligently failed to inspect the gas piping, to see a readily apparent dangerous brass flex connector connected to a nearby gas stove and remove or replace the connector, and to warn the occupants of the house of this dangerous condition.

I.

In granting defendant's motion for summary judgment, the trial court ruled that the defendant, despite its occupational skills, had no legal duty to notice, inspect, remedy, or warn of a dangerous condition within its plain view, when such condition was not a part of the particular appliance upon which the defendant was working. Plaintiffs contend such ruling was in error. Specifically, plaintiffs contend that defendant had a duty to inspect an older gas range, of which defendant was aware and which was within its plain view, for dangerous connectors which defendant knew would ultimately fail and cause an explosion. In support of their position, plaintiffs assert that defendant admitted that, upon viewing such a stove, it would inspect and warn the homeowner if defendant found a faulty connector. We do not agree that defendant had a duty to inspect the stove or to warn the occupants of the home.

Summary judgment is a drastic remedy and should be granted only upon a clear showing that there is no genuine issue of material fact. C.R.C.P. 56(c).

The moving party has the burden of establishing that no triable issue exists and all doubts should be resolved in favor of the non-moving party. *Smith v. Boyett*, 908 P.2d 508 (Colo.1995).

■ In determining whether there is an issue of material fact for the purposes of a summary judgment motion, an appellate court must resolve all doubts as to the existence of triable factual issues against the moving party and should give the party against whom the motion is asserted the benefit of all favorable inferences that may be drawn from the facts. *Gifford v. Colorado Springs*, 815 P.2d 1008 (Colo.App.1991).

Our review of a summary judgment is *de novo*. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo.1995).

■ Whether a particular defendant owes a duty to a particular plaintiff is a question of law for the court to decide. *Martinez v. Lewis*, 969 P.2d 213 (Colo.1998); *see also Turkey Creek, LLC v. Rosania*, 953 P.2d 1306 (Colo.App.1998)(the scope of legal duty is a question of law for a court to decide).

■ A duty may exist under a contract because a contractual obligation is the "matrix from which an independent tort obligation may arise." *Metropolitan Gas Repair Service, Inc. v. Kulik*, 621 P.2d 313, 317 (Colo.1980).

There are several factors to be considered in determining the existence of a duty in a particular case. They include:

[1] the risk involved, [2] the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, [3] the magnitude of the burden of guarding against injury or harm, and [4] the consequences of placing the burden upon the actor.

*University of Denver v. Whitlock*, 744 P.2d 54, 57 (Colo.1987).

### A.

The present case does not involve a negligent act. Rather, it involves an alleged failure to act. In nonfeasance cases, the existence of a duty has been recognized in only a limited group of special relationships between parties including common carrier/passenger, innkeeper/guest, employer/employee, possessor of land/invited entrant, parent/child, and hospital/patient. *University of Denver v. Whitlock, supra; see* Restatement (Second) of Torts § 314A (1965). The plumber/customer relationship here does not involve such a special relationship.

Further, we recognize that, under *Metropolitan Gas Repair Service, Inc. v. Kulik, supra*, a contractual obligation is not the measure of one's tort liability. In *Kulik*, an explosion in decedent's home was caused by a malfunction of a safety relief valve on a boiler. One of the defendants was called to replace the pump motor on the boiler and a repairman wrote in his report that he had "checked boiler." It was virtually undisputed that a plugged safety valve creates a serious hazard to the boiler system. While the defendant did not perform work directly on the safety valve, there was also evidentiary support for reasonable inferences that the safety valve was in plain view.

However, the present case is distinguishable from *Kulik*. Here, defendant's contractual services were limited to installing a water heater and to work related to the water heater. Thus, unlike in *Kulik*, where the defective valve was related to the boiler system, defendant's obligations under the contract here were not related to the stove's gas connector, which ultimately caused the explosion. Further, nothing in the record indicates that the defendant agreed or assumed a duty to make a general inspection of the premises. It is undisputed that the limited items defendant did inspect related only to the water heater and that defendant's work in relation to the water heater was performed competently.

Plaintiffs have not presented legal authority to support their contention that defendant had a duty to inspect an appliance upon which it was not asked to perform work. If there is no duty to inspect, and defendant was unaware of a hazard, there can be no duty to warn.

Nor do defendants have a duty under the factors set forth in *University of Denver v.*

*Whitlock, supra.* Even if we assume that the risk to plaintiff was great and that the effort required to inspect the stove would have been minimal, there is no evidence to indicate that the presence of a defective brass flex connector on another appliance was foreseeable.

Further, the consequences of imposing upon defendant the duty proposed by plaintiffs would be extensive. As the trial court noted, service providers should perform their contractual duties competently and refrain from causing injury. But, it is unreasonable to hold that such providers have a duty to investigate and remedy all other conditions nearby. We agree that this would be both costly and impractical.

We also reject plaintiff's contention that *Halliburton v. Public Service Co.,* 804 P.2d 213 (Colo.App.1990), in which a gas company was held liable for an explosion allegedly caused by a leaking flexible tube, is "identical to the case at bar." There, a division of this court determined that the gas company's duty arose from the fact that the company's product, natural gas, was a substantial factor in causing deterioration of the connector tube. In addition, the court held that manufacturers and distributors of natural gas owed the higher duty of care imposed in that case.

Here, the defendant is not a manufacturer or distributor of such gas. In fact, no product or service of the defendant was a factor in causing the explosion.

### B.

Plaintiffs, however, contend that both of defendant's plumbers stated that, when they see an old gas stove, they inspect it for faulty connectors. They also contend that one plumber remembered seeing the stove and the other one should have seen it. We conclude that such factors do not give rise to a duty to inspect.

A deposition of one of defendant's plumbers contains the following exchange:

Q: If a gas appliance is within your vision, do you take a look at it to see if there's a gas connector?

A. Yes.

Q. Okay. And the reason is you know that they're dangerous?

A. Yes.

Q. And if you spot one, you'll do what?

A. Recommend they replace it.

Further, one of defendant's plumbers admitted that he saw the stove. The facts that one of defendant's agents stated that when he saw an old stove he would inspect it and that one of the agents saw the stove do not, by themselves, give rise to a duty to inspect. Such a result would mean that every repairman would have to inspect every gas appliance seen, in every house, on every job. Even if there was a question of fact as to whether defendant was aware of the stove, plaintiff presented no evidence that either of defendant's plumbers ever saw the faulty connector.

Further, the question presented here is whether defendant had a duty to inspect, not whether defendant breached that duty. Whether defendant's other agent should have seen the stove is a question pertaining to breach of duty.

Although a contract may give rise to a tort obligation, here, the plaintiffs seek an extension of that obligation to an appliance unrelated to the underlying contract. We conclude plaintiff's extension goes too far. While defendant's contract did not render it "blind" to recognizing and warning of dangerous conditions, neither did it impose a duty to inspect appliances unrelated to its contractual obligation. No evidence was presented that defendant even knew the stove was still hooked up and in operable condition.

### II.

Plaintiffs also contend that the trial court erred in dismissing their second claim for relief. Such a ruling, they assert, holds that, under the Colorado Consumer Protection Act (CCPA), § 6–6–101, et seq., C.R.S. 2000, defendant's failure to obtain a building permit, in violation of the building code, did not result in a "loss of chance" for the dangerous connector to be discovered by a building inspector. We are not persuaded.

**1258**

In order to establish a claim under the CCPA, five elements must be present. These elements are:

(1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; *and* (5) *that the challenged practice caused the plaintiff's injury.*

*Hall v. Walter,* 969 P.2d 224, 235 (Colo.1998). (emphasis added)

Here, there is no indication that defendant's work on the water heater caused the plaintiff's injury. And, we have determined on the undisputed material facts that defendant had no duty to inspect the stove. Thus, even if defendant committed a deceptive trade practice by failing to get a building permit for the water heater as required by the city building code, plaintiffs have not provided evidence to establish the last CCPA element of causation.

Additionally, any "loss of chance" that the faulty flex connector would have been discovered by a building inspector, as a result of defendant obtaining a building permit, is pure speculation. Plaintiffs did not present evidence to counter the deposition testimony of Denver's chief heating and ventilating inspector that his personnel do not inspect other appliances within a house for safety issues, would not have looked behind the stove to check for a flexible connector, and would likely have ignored such a connector even if they had seen it. The only opposing evidence, an affidavit by a person who overheard a conversation between the chief inspector and plaintiffs' attorneys, does not comport with the requirements of C.R.C.P. 56(e) for admissibility.

Thus, plaintiff's CCPA claim must also fail. Accordingly, the judgment is affirmed.

TAUBMAN and CASEBOLT, JJ., concur.